# EXHIBIT A

MIN

# NOTE

November 9th, 2007                     Norwell,                     Massachusetts
[Date]                                   [City]                          [State]

31 Central Street
Norwell, MA 02061
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $746,250.00           (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **The Bank of Canton**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      **7.125 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**      day of each month beginning on **January 01, 2008**          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **December 1, 2037**          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **490 Turnpike Street**
**Canton, MA 02021**                                    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **5,027.62**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

VMP-5N (0207).01          Form 3200 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          Initials: _AEM_  _RRH_

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.



Form 3200 1/01



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
Robert R McNamara                -Borrower   Alice E McNamara                -Borrower

_____ (Seal)      _____ (Seal)
                                 -Borrower                                    -Borrower

_____ (Seal)      _____ (Seal)
                                 -Borrower                                    -Borrower

_____
Witness    Roger E. Hughes, Jr.

*[Sign Original Only]*



VMP-5N (0207).01                         Page 3 of 3                          Form 3200 1/01

# EXHIBIT B

Return To:

THIS IS TO CERTIFY THAT THE
FOREGOING INSTRUMENT IS A TRUE
AND EXACT COPY OF THE ORIGINAL.
BY: *[signature]*

The Bank of Canton
490 Turnpike Street
Canton, MA 02021

**111924**
Received & Recorded
PLYMOUTH COUNTY
REGISTRY OF DEEDS
15 NOV 2007  09:29A
JOHN R. BUCKLEY, JR
REGISTER
Bk 35296 Pg 161-17

————————————————[Space Above This Line For Recording Data]————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated November 9th, 2007
together with all Riders to this document.
(B) "Borrower" is Robert R McNamara and Alice E McNamara

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is The Bank of Canton

Lender is a corporation
organized and existing under the laws of The Commonwealth of Massachusetts

## PROPERTY:    31 Central Street, Norwell, MA 02061

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3022  1/01

VMP ®-6(MA) (0401)
Page 1 of 15          Initials: *[initials]*
    VMP Mortgage Solutions (800)521-7291

Lender's address is **490 Turnpike Street, Canton, MA 02021**

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated **November 9th, 2007**
The Note states that Borrower owes Lender **SEVEN HUNDRED FORTY SIX THOUSAND TWO
HUNDRED FIFTY AND 00/100**                                                     Dollars
(U.S. **$746,250.00**          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **December 1, 2037**         .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

**Exhibit A**

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

Initials: _AEM_

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the                                                        County                         [Type of Recording Jurisdiction]
of Plymouth                                                    [Name of Recording Jurisdiction]:

## See Exhibit A attached hereto and made a part hereof.

                                                                      which currently has the address of
31 Central Street                                                                          [Street]
Norwell                                        [City] , Massachusetts 02061                   [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(MA) (0401)                          Page 3 of 15              Initials                     Form 3022  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

VMP -6(MA) (0401)                     Page 7 of 15              Initials          Form 3022   1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials _____

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

Initials: _Hem_ 

VMP ®-6(MA) (0401)                     Page 13 of 15                     Form 3022   1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                        Robert R McNamara              -Borrower

_____        _____ (Seal)
                                        Alice E McNamara               -Borrower

_____ (Seal)  _____ (Seal)
                    -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                    -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                    -Borrower                                -Borrower

VMP -6(MA) (0401)                Page 14 of 15                Form 3022   1/01

## COMMONWEALTH OF MASSACHUSETTS

Plymouth_____ County, ss.

On this __9th__ day of ____Novmember____, 20 _07_, before me, the undersigned notary public, personally appeared Robert R McNamara, Alice E McNamara
proved to me through satisfactory evidence of identification, being (check whichever applies):
☒driver's license or other state or federal governmental document bearing a photographic image,
☐oath or affirmation of a credible witness known to me who knows the above signatory, or ☐ my own personal knowledge of the identity of the signatory, to be the person whose name is signed above, and acknowledged the foregoing to be signed by him/her voluntarily for its stated purpose.

Notary Public
My Commission Expires:  09/13/2013
Print Notary Public's Name: _Roger E. Hughes, Jr._
Qualified in the Commonwealth of Massachusetts

## EXHIBIT A

A certain parcel of land, with buildings thereon, situated on the Westerly side of Central Street, Norwell, Plymouth County, Massachusetts and shown as a parcel containing 4.08 acres of land, on a plan entitled "Plan of Land on Central Street and Mill Lane, Norwell, scale 1" = 40' dated November 14, 1972, Loring H. Jacobs and Assoc. Inc. 687 Main Street, Norwell, Mass." Said parcel is more fully described as follows:

EASTERLY        By said Central Street, by three courses, 63.00 feet, 54.50 feet and 172.10 feet respectively;

SOUTHERLY       By land now or formerly of Sara E. Black, as shown on said plan, 308.08 feet;

WESTERLY        By land of Town of Norwell, 58.07 feet;

SOUTHERLY       By land of the Town of Norwell by two courses, 23.74 feet and 155.20 feet respectively;

WESTERLY        By land of the Town of Norwell, by two courses, 345.25 feet and 139.75 feet respectively;

NORTHERLY       By land now or formerly of Amazeen, by three courses 83.39 feet, 87.19 feet and 16.61 feet respectively;

EASTERLY        By land now or formerly of Margaret R. Gilbert, 306.93 feet;

NORTHERLY       By land of said Gilbert, by two courses, 87.96 feet and 207.15 feet respectively.

For title reference see deed recorded at Plymouth County Registry of Deeds in Book 33871, Page 321.

# EXHIBIT C



2015 00047734
Bk: 45708 Pg: 180 Page: 1 of 4
Recorded: 06/24/2015 02:30 PM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

# FORECLOSURE DEED

**THE BANK OF CANTON,** a corporation duly established under the laws of the
Commonwealth of Massachusetts and having its usual place of business at 490 Turnpike
Street, Canton, Massachusetts 02021

holder of a mortgage from **ROBERT R. McNAMARA and ALICE E. McNAMARA**

to **THE BANK OF CANTON,**

said mortgage dated **November 9, 2007** and recorded with Plymouthe County Registry
of Deeds in **Book 35296, Page 161**

by the power conferred by said mortgage and every other power,

for $ 600,000.00 paid, grants to

**THE BANK OF CANTON,** a corporation duly established under the laws of the
Commonwealth of Massachusetts and having its usual place of business at 490 Turnpike
Street, Canton, MA 02021

the premises conveyed by said mortgage.

WITNESS the execution and the corporate seal of said corporation this *22nd* day of
June, 2015.

THE BANK OF CANTON

by: _____
Edward J. Gaughan, Jr. Senior Vice-President

**CANCELLED**
...SETTS EXCISE TAX
Plymouth District ROD #11 001
Date:  06/24/2015 02:30 PM
Ctrl# 082209 20713 Doc# 00047734
Fee: $2,736.00 Cons: $600,000.00

# COMMONWEALTH OF MASSACHUSETTS

Norfolk, s.s.

On this *2nd* day of June, 2015 before me, the undersigned notary public, personally appeared Edward J. Gaughan, Jr., Senior Vice President as aforesaid and known to me personally to be the person whose name is signed to the preceding document and acknowledged to me that he signed said document on behalf of The Bank of Canton voluntarily, for its stated purpose.

Notary Public

1/21/22

## AFFIDAVIT

I,, Edward J. Gaughan, Jr., Senior Vice President and duly authorized agent of **The Bank of Canton**, the mortgagee named in the foregoing deed, make oath and say that the principal, interest and fine obligations, and the obligation to pay taxes and assessments mentioned in the mortgage above referred to were not paid or tendered or performed when due or prior to the sale, and that I published on the 14th, 21st and 28th days of May, 2015 in the NORWELL MARINER, a newspaper published or by its title page purporting to be published in Norwell, Massachusetts aforesaid and having a circulation, a notice, of which EXHIBIT A attached hereto is a true copy.

I have also complied with Chapter 244, Section 14 by mailing notice of the sale to the required parties, certified mail, return receipt requested.

Pursuant to said notice at the time and place therein appointed, I sold the mortgaged premises at public auction by Robert Nordberg, duly licensed auctioneer, to

## THE BANK OF CANTON

for $ 600,000.00

bid by THE BANK OF CANTON

being the highest bid made therefor at said auction.

_____
Edward J. Gaughan, Jr., Senior Vice President
and duly authorized agent of The Bank of Canton


## COMMONWEALTH OF MASSACHUSETTS

Norfolk, s.s.

On this _22nd_ day of Juner, 2015 before me, the undersigned notary public, personally appeared Edward J. Gaughan, Jr. , Senior Vice President as aforesaid and known to me personally to be the person whose name is signed to the preceding document and swore to me that the statements contained therein are true and correct to the best of his knowledge and belief.

_____
Notary Public

1/21/22

## EXHIBIT A

### 31 CENTRAL STREET
### LEGAL NOTICE
### MORTGAGEE'S SALE
### OF REAL ESTATE

By virtue and in execution of the **POWER OF SALE** contained in a certain mortgage given by **ROBERT R. MCNAMARA** and **ALICE E. MCNAMARA** to **THE BANK OF CANTON** a banking corporation established under the laws of The Commonwealth of Massachusetts, having its usual place of business in Canton, Massachusetts, said mortgage dated November 9, 2007 and recorded with Plymouth County Registry of Deeds in Book 35296, Page 161, of which mortgage the undersigned is the present holder, for breach of the conditions of said mortgage and for the purpose of foreclosing the same will be sold at Public Auction at 2:00 o'clock P.M. on the 11th day of June, 2015, upon the mortgaged premises at 31 Central Street, Norwell, MA 02061 all and singular the premises described in said mortgage

To wit:

A certain parcel of land, with buildings thereon, situated on the Westerly side of Central Street, Norwell, Plymouth County, Massachusetts and shown as a parcel containing 4.08 acres of land, on a plan entitled "Plan of land on Central Street and Mill Lane, Norwell, scale 1" = 40' dated November 14, 1972, Loring H. Jacobs and Assoc., Inc. 687 Main Street, Norwell, Mass." Said parcel is more fully described as follows:

EASTERLY By said Central Street, by three courses, 63.00 feet, 54.50 feet and 172.10 feet respectively;
SOUTHERLY By land now or formerly of Sara E. Black, as shown on said plan, 308.08 feet;
WESTERLY By land of Town of Norwell, 58.07 feet;
SOUTHERLY By land of the Town of Norwell by two courses, 23.74 feet and 155.20 feet respectively;
WESTERLY By land of the Town of Norwell, by two courses, 345.25 feet and 139.75 feet respectively;
NORTHERLY By land now or formerly of Amazeen, by three courses 83.39 feet, 87.19 feet and 16.61 feet respectively;
EASTERLY By land now or formerly of Margaret R. Gilbert, 306.93 feet;
NORTHERLY By land of said Gilbert, by two courses, 87.96 feet and 207.15 feet respectively

For title reference see deed recorded in Plymouth County Registry of Deeds in Book 33871, Page 321.

**FIVE THOUSAND DOLLARS ($ 5,000.00)** in cash or by certified check or bank check will be required to be shown at the time and place of sale in order to qualify to bid; the successful bidder shall deposit said FIVE THOUSAND DOLLARS ($5,000.00) in cash or by certified check or bank check at the time and place of sale as earnest money. The high bidder will be required to sign a Memorandum of Sale upon acceptance of bid. In the event the high bidder fails to complete the purchase, the said deposit shall be retained by the mortgagee as damages. The balance is to be paid in cash or by certified check or bank check and the deed is to be delivered within thirty days thereafter. In case of any discrepancy between the description of the premises contained in this notice and the description of the premises contained in the mortgage, the description in the mortgage shall prevail. Other terms, if any, to be announced at the sale.

May 5, 2015

Signed: THE BANK OF CANTON
Present Holder of said Mortgage

By: William D. Jackson, Its Attorney
Jackson and Sutherland, P.C.
280 Libbey Parkway
Weymouth, MA 02189
617-472-1020
BBO # 248920

AD#13276947
Norwell Mariner 5/14, 5/21, 5/28/15

# EXHIBIT D

<u>**Exhibit E**</u>

**LEASE AGREEMENT**

This **LEASE AGREEMENT** dated this 1st day of September, 2011 by and between **McNamara Associates, Inc.** (hereinafter referred to as "**Landlord**") a Massachusetts limited liability company having its principal place of business at 29 Priscilla Road, Chestnut Hill, Massachusetts 02467, and **Sparrell Funeral Service, Inc.,** a Massachusetts corporation having its principal place of business at 30 Central Street, Norwell, Massachusetts 02061, hereinafter referred to as "**Tenant**".

**WITNESSETH**

1.     <u>**Leased Premises**</u>: In consideration of the rents, terms provisions and covenants of this Lease Agreement, Landlord does hereby lease and let onto Tenant and Tenant does hereby hire, lease and take from Landlord, the land and buildings thereon more particularly described in <u>**Schedule A**</u> attached hereto and by this reference incorporated herein, (hereinafter called the "**Leased Premises**"), located at 1 Summer Street, Cohasset, MA and 30 Central Street, Norwell, MA.

Tenant shall have access to the Leased Premises at all times 24 hours per day, 7 days per week, subject to interruption due to causes beyond Landlord's reasonable control.

1.1   <u>**Triple-Net Lease**</u>: This Lease is an absolutely triple net lease and it is the intention of Landlord and Tenant that the Rent and all other sums payable hereunder to or on behalf of Landlord shall be absolutely "net" to Landlord, such that this Lease shall yield to Landlord the Rent specified herein during the Term, without payment by Landlord of, or provision for, taxes, utilities, insurance, maintenance, repairs, or any other cost or expense associated with or arising out of the condition of the Leased Premises, including any and all principal, interest and other costs ("**Mortgage Payments**") owing to Landlord's lender, Eastern Bank (the "**Lender**"), pursuant to the terms and conditions of a promissory note dated March 25, 2010 from Landlord which is secured by a first priority mortgage on the Leased Premises, or the existence, use, ownership, construction, operation, and/or maintenance of the Leased Premises other than as specifically set forth in this Lease, all of which shall be the sole and continuing responsibility of Tenant. Under no circumstances or conditions, whether now existing or hereafter arising, or whether beyond the present contemplation of the Parties, shall Landlord be expected or required to make any payment of any kind whatsoever associated with or arising out of the existence, use, ownership, construction, operation, and/or maintenance of the Leased Premises, or be under any other obligation or liability under this Lease, except as expressly provided herein. All annual Base Rent, Additional Rent and all other sums payable hereunder shall be paid without notice or demand and without setoff, abatement, suspension, deferment, reduction or deduction.

2.     <u>**Term**</u>: To have and to hold said Leased Premises for a term of five (5) years, commencing on the **1ˢᵗ day of September, 2011** (the "**Commencement Date**"). Except as hereinafter provided, Landlord shall deliver possession of the Leased Premises on or before the date herein above specified for commencement of the Term, but delivery of possession prior to

Page 27 of 65



Exhibit *13*
Date *7-7-17*

D.A. Gill Brown
Gill Reporting, Inc.

**CONFIDENTIAL**

such Commencement Date shall not affect the expiration date of this Lease.

     **2.1**    **Option Term**. So long as Tenant is not otherwise in default beyond any applicable cure period, or has not been in default beyond any applicable grace periods on two (2) or more previous occasions during the twelve (12) months prior to the time the **"Option Notice"** as herein defined, is given, Tenant may, at its option, extend the Term for one (1) additional five (5) year term by sending written notice (the **"Option Notice"**) to Landlord at least six (6) months prior to the expiration of the Term. Time is of the essence of this clause. If Tenant notifies Landlord of its intent to exercise its option to renew the Term in accordance with the provisions set forth herein, this Lease shall be extended without written amendment and the Premises will be considered to have been leased by Landlord to Tenant for an additional five (5) year term beginning immediately after the end of the then current Term, and except for Base Rent (which shall be determined in accordance with the provisions set forth in Section 4.2 below) and as otherwise provided for in this Lease, all of the terms, covenants, conditions and provisions of this Lease shall continue to be in full force and effect, except that this Section of the Lease shall not grant any further option to extend the term of the lease beyond the Option Term.

     **3.**    **Permitted Use**: The Leased Premises shall be used by the Tenant for any lawful purposes. Tenant shall comply, at Tenant's expense, with all applicable requirements of laws, orders, ordinances and regulations of all governmental authorities in connection with the Tenant's occupancy of the Lease Premises and the operation of Tenant's business therein. Tenant agrees not to occupy or use, or permit any portion of the Leased Premises to be occupied or used for any business or purpose which is disruptive or deemed to be extra-hazardous on account of fire or permit anything to be done which would in any way increase the rate of fire insurance coverage on the Leased Premises or its contents.

     **4.**    **Base Rent**: Tenant agrees to pay to Landlord as base rent in lawful money of the United States of America (hereinafter called **"Base Rent"**) for the Leased Premises, without notice, set-off or demand, the annual sum of Twenty Four Thousand Dollars ($24,000.00) payable in monthly installments of Two Thousand Dollars ($2,000.00) commencing September 1, 2011 said monthly installments to be due and payable on the first (1st) day of each and every month. Said payment shall be made by automatic withdrawal from the Tenant's bank account, directly to Landlord.

     **4.1.**    **Additional Rent**. All rents, Mortgage Payments, charges, costs, expenses, reimbursements, fees, interest, Taxes, Premises Insurance Charges, Personal Property Taxes and all other monetary payments to be paid by Tenant to Landlord or by Tenant to third parties in accordance with this Lease, other than Base Rent, shall be deemed **"Additional Rent."** Additional Rent and Base Rent may be hereinafter referred to collectively as **"Rent"** and Landlord reserves the same rights and remedies against Tenant for default in any such payments as including, without limitation, the right to seek and recover the same as "rent" under any applicable provision of the United States Bankruptcy Act  Tenant covenants and agrees to pay to Landlord or such other third parties entitled thereto, without deduction, setoff or abatement whatsoever, in addition to and not in lieu of Base Rent, all Additional Rent which, if due to Landlord, shall be due and payable within ten (10) days after written demand. Additional Rent

shall include, without limitation:

(a) **Taxes, Utilities, and Operating Expenses**. Tenant shall pay for all Taxes, Utilities, and Operating Expenses (as such terms are hereinafter defined) when the same become due and payable through the term of this Lease, or any renewal or extension thereof.

(b) **Premises Insurance Charges**. All annual premiums paid or incurred by Landlord at any time during the Term in insuring the Leased Premises and any building improvements thereon during any Lease Year, including, general liability insurance, as deemed necessary by Landlord or as may be reasonably required by Landlord's mortgagee, if any (collectively, **"Premises Insurance Charges"**). Tenant shall pay to Landlord as Additional Rent, the Premises Insurance Charges within ten (10) days from receipt of an invoice therefor (together with a copy of the premium bill) from Landlord.

(c) **Mortgage Payments**. Any and all principal, interest and other escrow charges or costs owing to Lender pursuant to the terms and conditions of a loan as evidenced by Lender's Commercial Term Note and Loan Agreement both dated March 25, 2010. Said payments shall be made by automatic withdrawal from the Tenant's bank account, direct to Lender.

Any sums due and payable under this Lease shall be adjusted upon receipt of the actual bills therefor and the obligations of this section shall survive the termination or expiration of the Lease.

4.2 **Option Term Rent:** Base Rent during the Option Term shall be the Fair Market Rent (as defined below) for the Leased Premises. "Fair Market Rent" for the Leased Premises shall be computed as of the date of the applicable notice to extend at the then current effective rentals being charged to new tenants for comparable space located in the South Shore, Massachusetts area, taking into account and giving effect to all facts and circumstances customarily taken into account by prudent and commercially reasonable landlords and tenants, including, without limitation, the provisions of this Lease and concessions then customarily granted to tenants of similar premises for similar uses in similar buildings and lots in the South Shore, Massachusetts area, but specifically excluding moving allowances. Notwithstanding the foregoing or the procedure set forth below, in no instance shall the Fair Market Rent be less than a minimum three percent (3%) increase above the then existing Base Rent.

The parties agree that subject to the minimum rent escalation noted above, the Fair Market Rent shall be determined as follows.

A. Simultaneously with Tenant's written notice of Tenant's election to extend the term, Tenant shall provide Landlord with a copy of an appraisal that sets forth the Fair Market Rent for the Premises ("Tenant's Appraisal") by an appraiser selected by Tenant ("Tenant's Appraiser").

B. If Landlord disagrees with the determination of Fair Market Rent as set forth in

Tenant's Appraisal, Landlord shall have sixty (60) days from the date of receipt of Tenant's Appraisal in which to provide Tenant with a copy of an appraisal that sets forth the Fair Market Rent for the Premises ("Landlord's Appraisal") by an appraiser selected by Landlord ("Landlord's Appraiser").

C.     If Landlord agrees with the determination of Fair Market Rent as set forth in Tenant's Appraisal or Landlord fails to deliver to Tenant a copy of Landlord's Appraisal within said sixty (60) day period, then the Fair Market Rent shall be the greater of the Fair Market Rent set forth in Tenant's Appraisal or that amount of rent determined after applying the minimum rent escalation amount of three percent (3%) to the then existing Base Rent.

D.     If the determination of Fair Market Rent by Landlord's Appraiser is within ten percent (10%) of the determination of Fair Market Rent by Tenant's Appraiser, then the Fair Market Rent shall be the average of Landlord's Appraisal and Tenant's Appraisal.

E.     If Landlord's Appraisal and Tenant's Appraisal are not within ten (10%) percent of one another, Landlord's Appraiser and Tenant's Appraiser shall mutually select a third appraiser, or, if they cannot agree on a third appraiser within ten (10) days, then either Landlord or Tenant may so notify the then President of the Greater Boston Real Estate Board and request him to select an impartial third appraiser to determine Fair Market Rent as herein defined, who shall, within forty-five (45) days thereafter issue a third appraisal that sets forth the Fair Market Rent for the Premises (the "Third Appraisal"). In such case, Fair Market Rent shall be determined as the average of the two appraisals that are the closest to each other in actual dollar amounts. If two of the appraisals are equally close to a third appraisal, the appraisal that is equally close to the other two shall be the Fair Market Rent.

F.     "Within ten (10%) percent" shall be defined as when the higher Appraisal is no more than ten (10%) percent higher than the lower Appraisal.

Each appraiser shall be a licensed commercial real estate broker, each having at least ten (10) years experience in retail leasing in the South Shore, Massachusetts market. Landlord shall pay all expenses associated with Landlord's Appraiser. Tenant shall pay all expenses associated with Tenant's Appraiser. Landlord and Tenant shall share equally in the cost of the third appraiser, if any. In the event that Fair Market Rent has not been determined as of the start of the Option Term, then Rent shall be paid at the rate payable immediately prior thereto, and an adjustment, retroactive to the start of the Option Term, shall be made once Fair Market Rent is known.

    4.3     **Option to Purchase**. So long as Tenant is not otherwise in default beyond any applicable cure period, or has not been in default beyond any applicable grace periods on one (1) or more previous occasions during the twelve (12) months prior to the time the **"Purchase Option Notice"** as herein defined, is given, Tenant shall have the right and option (the **"Purchase Option"**) to purchase the Leased Premises for the purchase price of One Million Three Hundred Twenty Two Thousand Dollars ($1,322,000.00) at any time during the

MCT/262622.6

Term. Any and all Rent and Mortgage Payments paid by Tenant throughout the Term shall be credited against the purchase price. If Tenant elects to exercise the Purchase Option, it shall do so by giving Landlord written notice to that affect (the "**Purchase Option Notice**") and the parties shall enter into a mutually agreeable purchase and sale agreement within the next ten (10) business days and close the sale within sixty (60) days from the date of the Landlord's receipt of the Purchase Option Notice.

5.      **Utilities and Services**. From and after the Commencement Date, Tenant shall, as Additional Rent, pay directly to the proper authorities charged with the collection thereof all charges for water, sewer, gas, electricity, fire protection and other utilities or services used or consumed on the Leased Premises, whether called charge, tax, assessment, fee or otherwise, including, without limitation, water and sewer use charges and taxes, if any, which are not deemed part of Taxes, all such charges to be paid as the same from time to time become due (collectively the "**Utilities**"). It is understood and agreed that Tenant shall make its own arrangements for obtaining such utilities and that Landlord shall not be liable for any interruption or failure in the supply of any such utilities to the Leased Premises, except for interruptions or failures resulting from Landlord's negligence or willful misconduct. If Tenant is not charged directly by the respective utility for any of such utilities or services, Tenant shall, from time to time, within ten (10) days of Landlord's invoice therefor, pay to Landlord such charges. Tenant will be responsible for making any deposits required by any utility provider.

(a)      **Involuntary Cessation of Services**. Landlord reserves the right, without any liability to Tenant and without affecting Tenant's covenants and obligations hereunder, to stop service of the HVAC, electric, sanitary, or other systems serving the Leased Premises, or to stop any other services required by Landlord under this Lease, whenever and for so long as may be necessary by reason of (i) accidents, emergencies, strikes, or the making of repairs or changes which Landlord in good faith deems necessary or (ii) any other cause beyond Landlord's reasonable control. Further, it is also understood and agreed that Landlord shall have no liability or responsibility for a cessation of services to the Leased Premises that occurs as a result of causes beyond Landlord's reasonable control. No such interruption of service shall be deemed an eviction or disturbance of Tenant's use and possession of the Premises or any part thereof, or render Landlord liable to Tenant for damages, or relieve Tenant from performance of Tenant's obligations under this Lease, including, but not limited to, the obligation to pay Rent; provided, however, that if any interruption of services persists for a period in excess of five (5) consecutive business days Tenant shall, as Tenant's sole remedy, be entitled to a proportional abatement of Rent to the extent, if any, of any actual loss of use of the Leased Premises by Tenant.

6.      **Payment of Taxes.** Unless otherwise paid to Lender as part of the Mortgage Payments, Tenant shall pay to Landlord as Additional Rent, with respect to each "Tax Year" (as hereinafter defined) or portion thereof included in the Term, the amount of the "Taxes" (as defined below) levied, assessed, imposed, payable or paid upon the Premises. A "Tax Year" shall mean that twelve (12) calendar month period commencing with the first day of the fiscal year of the taxing authority preceding the Commencement Date and each twelve (12) month period thereafter. Tenant's share of such Taxes for the first Tax Year and the last Tax Year falling within the Term shall be apportioned on the basis of the number of months of such Tax Year falling within the Term.

(a)   **Definition of Taxes.**  The term "Tax or Taxes" shall mean and include, without limitation, all real estate ad valorem taxes, assessments, water and sewer rents, school taxes, and other governmental impositions and charges of every kind and nature whatsoever, extraordinary as well as ordinary, foreseen and unforeseen, and each and every installment thereof, which shall during or with respect to the Term (or the first Tax Year prior to the Commencement Date) be levied, assessed, imposed, become or to become due and payable upon the Leased Premises, or which arise in connection with the use, occupancy or possession of the Leased Premises or any part thereof.  Such term shall include any charge, such as water meter charge and the sewer rent based thereon.  Whether or not Landlord shall take the benefit of the provisions of any statute or ordinance permitting any assessment for public betterments or improvements to be paid over a period of time, Landlord shall, nevertheless, be deemed to have taken such benefit so that the term Taxes shall include only the current annual installment of any such assessment and the interest on unpaid installments.  A tax bill or copy thereof submitted by Landlord to Tenant shall be conclusive evidence of the amount of a tax or installment thereof.  Nothing herein contained shall be construed to include as Taxes any inheritance, estate, succession, transfer, gift, franchise, corporation, income or profit tax or capital levy that is or may be imposed upon Landlord; provided, however, that, if at any time during the Term the method of taxation prevailing at the execution of this Lease shall be altered so that in lieu of or as a substitute for or in addition to the whole or any part of the Taxes levied, assessed or imposed as above described, there shall be levied, assessed or imposed (i) a tax on the rents received from the Leased Premises, or (ii) a license fee measured by the rents received by Landlord from the Premises or any portion thereof, or (iii) a tax or license fee imposed upon Landlord which is otherwise measured by or based in whole or in part upon the land and/or building or any portion thereof, then the same shall be included in the computation of Taxes hereunder.

Landlord has not received notice of any outstanding assessments and to the best of Landlord's knowledge, it is not aware of any threatened or pending assessments.

(b)   **Abatements.**  Taxes upon the Leased Premises for any tax year shall mean such amounts as shall be finally determined after deducting abatements, refunds or rebates, if any, less the cost and expenses of obtaining the same, to be the Taxes payable with respect to the Leased Premises due from Tenant to Landlord in accordance with the provisions of this Article.  Taxes upon the Leased Premises for any tax year shall be deemed to be the Taxes assessed for such year until such time as an abatement, rebate or refund shall be made for any tax year.  An appropriate adjustment or refund shall be made in the amount due from or paid by Tenant to Landlord on account of abatement, rebate or refund less the cost and expense of obtaining the same within thirty (30) days after receipt of same by Landlord.  Either Landlord or Tenant shall have the right, but not the obligation, to seek such abatement, refund or rebate.

(c)   **Method of Payment.**  Upon request from Landlord and unless otherwise paid to Lender as part of the Mortgage Payments,, Tenant agrees to pay, as Additional Rent, together with the monthly payment of Base Rent, one-twelfth (1/12) of the estimated amount of Taxes payable by Tenant under this Lease, in advance.  If Landlord has, prior to the Commencement Date, paid any Taxes covering a tax year or any part thereof falling within the Term of this Lease, Tenant shall pay that Tenant's share of such tax bill (in accordance with the provisions of Section7) allocable to the first tax year.  Landlord may estimate the amount of Taxes for any tax

**CONFIDENTIAL**

year and Tenant agrees to pay one-twelfth (1/12) of such estimated amount on the first day of each month of the Term and Landlord shall, upon receipt of the actual tax bill, provide a copy thereof to Tenant together with an appropriate adjustment determining the amount payable by Tenant for such tax tear. If Landlord does not request monthly estimates of the Taxes, then Tenant shall pay to Landlord the amount of Taxes owing within twenty (20) days from receipt of an invoice therefor (together with a copy of the tax bill) from Landlord.

(d)     **Taxes on Tenant's Personal Property and Improvements.** Tenant shall pay, prior to any due date, all Taxes and governmental impositions of whatever kind or nature imposed with respect to all personal property, including exterior signs of Tenant, owned or used by Tenant in or on the Premises, and Tenant shall reimburse Landlord as Additional Rent within twenty (20) days, if Landlord shall have paid any such tax in the first instance.

7.     **Payment of Operating Expenses.**  Tenant acknowledges and agrees that as the sole occupant of the Premises it shall be solely responsible for,  and pay as Additional Rent, any and all Operating Expenses associated with or related to the Leased Premises other than as specifically set forth in this Lease.  The term **"Operating Expenses"** shall be defined to include all customary expenses, costs and disbursement of every kind and nature which shall arise in connection with the operation, maintenance, repair and management of the Leased Premises.

8.     **Mechanic's Lien**: Tenant shall not permit any mechanics', laborers', materialmens' or similar liens to remain upon the Leased Premises for labor or material furnished or claimed to have been furnished to Tenant in connection with work of any character performed or claimed to have been performed on the Leased Premises or at the direction or with the consent of Tenant, whether performed or furnished or claimed to have been performed or furnished before or after the commencement of the Term of this Lease.  If any such mechanic's lien shall at any time be filed against the Leased Premises, Tenant shall cause the same to be discharged of record within twenty (20) days after the date of filing the same.  If the Tenant shall fail to discharge such mechanic's lien within such period, then in addition to any other right or remedy of the Landlord, the Landlord may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the discharge of such lien by deposit in court, or by giving security or in such other manner as prescribed by law.  Any amount paid by the Landlord for any of the aforesaid purposes, and all reasonable legal fees, in the discharge of such lien, with interest thereon at the rate of twelve (12%) per cent per annum (or such maximum amount permitted by law, whichever is the lesser) from the date of payment shall be repaid by Tenant to Landlord on demand.

9.     **Repairs and Maintenance**: Tenant, at Tenant's cost and expense, shall keep and maintain in the same condition as when delivered to Tenant, the foundation, exterior walls (including glass materials used in structural portions), and structural part of the floor, and roof and all associated roof components, and septic system and all components thereof, the heating, ventilating and air conditioning system, mechanical and electrical systems, conduits and pipes supplying utilities to the Leased Premises, and all plumbing serving the Leased Premises and any building improvements thereon generally.  In addition to the foregoing, Tenant shall, at all times throughout the term of this Lease, including renewals and extensions, at the Tenant's cost and expense, keep and maintain in good order, condition and repair, the Leased Premises and every

**CONFIDENTIAL**

part thereof including, but not limited to, the maintenance, repair and replacement, if necessary, of the exterior and interior portions of all doors, glass and glass windows; all lighting and plumbing systems within, affixed to or serving the Leased Premises; interior walls, partitions, floors and ceilings; and all fixtures, appliances and equipment. If Tenant shall fail to keep and preserve the Leased Premises in the state and condition required by this Paragraph after notice shall have been given Tenant in accordance with this Lease, the Landlord may at its option put or cause the same to be put into condition and state of repair necessary, and in such case the Tenant, on demand, shall pay the costs thereof.

Tenant shall be responsible for all exterior maintenance of the areas outside the buildings, including grounds and parking areas, and specifically without limitation, snow and ice removal.

(a)   **As-Is, Where Is:**  Tenant further agrees that it is familiar with the condition of the Leased Premises and hereby accepts the foregoing on an "AS-IS", "WHERE-IS" basis. Except as specifically set forth herein, Tenant acknowledges that neither Landlord nor any agent or representative of Landlord has made any representation or warranties as to the condition or the suitability of the Leased Premises for Tenant's intended use. Tenant represents and warrants that Tenant has made its own inspection of the Leased Premises.

(b)   **Compliance with Laws.**  Tenant agrees to make all repairs, alterations or replacements to the Leased Premises required by any law or ordinance or any order or regulation of any public authority because of the Permitted Use; to keep the Leased Premises equipped with all safety appliances so required because of such Permitted Use; to procure any licenses and permits required for any such Permitted Use; to pay all municipal, county or state taxes assessed against the leasehold interest hereunder, or personal property of any kind owned by or placed in, upon or about the Leased Premises by Tenant; and to comply with the orders and regulations of all governmental authorities, except that Tenant may defer compliance so long as the validity of any such law, ordinance, order or regulation shall be contested in good faith and by appropriate legal proceedings, if Tenant first gives Landlord assurance satisfactory to Landlord against any loss, cost or expense on account thereof.

(c)   **Payment by Tenant.**  To pay promptly when due the entire cost of any work to the Leased Premises undertaken by Tenant.

**10.   Hazardous Substances:**  "Hazardous Substance", as used in this paragraph, shall mean those substances and waste which are defined as hazardous in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. Section 9601 et seq., including, but not limited to, those substances listed in the United States Department of Transportation Hazardous Materials Table (49 CFR 172.101) and in MGL c. 21E and The Massachusetts Contingency Plan, 310 CMR 40.00 et seq., and shall include, without limitation, flammables, explosives, radioactive materials, asbestos, polychlorinated biphenyls (PCBs), chemicals known to cause cancer or reproductive toxicity, pollutants, contaminants, hazardous wastes, toxic substances or related materials, petroleum and petroleum products, and substances including, without limitation, Freon or other chlorofluorocarbons declared to be hazardous or toxic or regulated or banned under any law or regulation now or hereafter enacted or promulgated by any government authority (hereinafter, collectively, "Hazardous Substances").

**CONFIDENTIAL**

Tenant shall not cause or permit to occur: (a) any violation of any federal, state, or local law, ordinance, or regulations now or hereafter enacted, related to environmental conditions on, under, or about the Leased Premises, or arising from Tenant's use or occupancy of the Leased Premises, including, but not limited to, soil and ground water conditions; or (b) the use, generation, release, manufacture, refining, production, processing, storage, or disposal of any Hazardous Substance on, under, or about the Leased Premises, or the transportation to or from the Leased Premises of any Hazardous Substance.

Tenant shall indemnify, defend, and hold harmless Landlord, the manager of the property, and their respective officers, directors, beneficiaries, shareholders, partners, agents, and employees from all fines, suits, procedures, claims, and actions of every kind, and all costs associated therewith (including attorneys' and consultants' fees) arising out of or in any way connected with any deposit, spill, discharge, or other release of Hazardous Substances that occurs during the term of this Lease, at or from the Leased Premises, or which arises at any time from Tenant's use or occupancy of the Leased Premises, or from Tenant's failure to provide all information, make all submissions, and take all steps required by all Authorities under the Laws and all other environmental laws. Tenant's obligations and liabilities under this Paragraph shall survive the expiration of this Lease.

11. **Hold Harmless: Indemnification.** Tenant shall defend, indemnify and save harmless Landlord and its agents, members and employees against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable attorneys' fees, which may be imposed upon or incurred by or asserted against Landlord and/or its agents by reason of any of the following occurring during the Term, or during any period of time prior to the Commencement Date that Tenant may have been given access to or possession of all or any part of the Leased Premises arising out of (i) any work  or thing being done in on or about the Leased Premises or any part thereof by or at the instance of Tenant, its agents, contractors, subcontractors, servants, employees, licensees or invitees, excepting those actions which are a result of the adjudicated fault or gross negligence of Landlord, its agents, contractors, servants or employees; (ii) any negligence or otherwise wrongful act or omission on the part of Tenant or any of its agents, contractors, subcontractors, servants, employees, subtenants, licensees or invitees; (iii) any accident, injury or damage to any person or property occurring in, on or about the Leased Premises, excepting those accidents, injuries or damages which result from the adjudicated fault or gross negligence of the Landlord, its agents, contractors, servants any violations of Environmental Law caused by or resulting from any use of the Premises prior to the Commencement Date; and (iv) any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms, provisions, conditions or limitations contained in this Lease on its part to be performed or complied with.  In case any action or proceeding is brought against Landlord by reason of any such claim, Tenant upon written notice from Landlord shall at Tenant's expense resist or defend such action or proceeding by counsel selected by and acceptable to Landlord.

12. **Entry for Repair, Inspection,:** The Landlord or its employees or agents shall have the right without any diminution of rent or other charges payable hereunder by Tenant to enter

**CONFIDENTIAL**

the Leased Premises at all reasonable times for the purposes of exhibiting the Leased Premises to prospective tenants or purchasers, inspection, cleaning, repairing, altering or improving the same, but nothing contained in this Paragraph shall be construed so as to impose any obligation on the Landlord to make any repairs, alterations, or improvements.

13.   **Tenant Fit-Up, Alterations**:   Tenant will not make any alterations, repairs, additions or improvements in or to the Leased Premises or add, subtract, or in any way change any locks, plumbing or wiring therein without the prior written consent of the Landlord, which consent shall not be unreasonably withheld or delayed, as to the character of the alterations, additions or improvements to be made to the Leased Premises.  Notwithstanding the foregoing, Tenant may install desks, chairs, computers, office equipment and other personal property within the Leased Premises without the need for obtaining Landlord's written consent hereunder.

14.   **Landlord's Services**.  Landlord shall provide no services to the Tenant hereunder.

15.   **Signs**: Tenant agrees that no sign, advertisement or notice will be placed or painted on any part of the outside of the building or Leased Premises except in such manner, style and places as designated by the Landlord; and the Landlord reserves all rights to remove all others at the expense of the Tenant.  Landlord's approvals rendered hereunder shall not be unreasonably withheld or delayed, notwithstanding anything herein to the contrary.

16.   **Quiet Enjoyment**: Landlord does hereby warrant that, upon payment by Tenant of the rents and other amounts due and the performance of all the terms and conditions hereof, Tenant shall peacefully have, hold and enjoy the Leased Premises during the full Term of this Lease and any extension or renewal thereof.

17.   **Assignment and Subletting**: Tenant agrees not to assign this Lease or sublet or license said Leased Premises or any part thereof, whether by voluntary act, operation of law, or otherwise, without the specific prior written consent of Landlord in each instance.   To the extent Landlord consents to any assignment or subletting, such assignment or subletting shall not relieve or discharge Tenant or the Guarantor from the performance of the terms, covenants, and conditions imposed upon Tenant under this Lease.

18.   **Loss by Casualty**: In the event of any damage or destruction to the Leased Premises by fire or other cause during the term hereof, the following provisions shall apply;

(a)   If the building improvements are damaged by fire or any other cause to such extent that the cost of restoration, as reasonably estimated by Landlord, will equal or exceed thirty percent (30%) of said replacement value of the building improvement (exclusive of foundations) just prior to the occurrence of the damage, the Landlord or Tenant may, no later than the sixtieth (60th) day following the damage, give the other written notice of their election to terminate this Lease.

(b)   If the cost of restoration as estimated by Landlord shall amount to less than thirty percent (30%) of said replacement value of the building improvement, or if,

**CONFIDENTIAL**

despite the costs, Landlord does not elect to terminate this Lease, Landlord shall, upon receipt of the proceeds of Tenant's casualty insurance, restore the building improvement and the Leased Premises with reasonable promptness, subject to delays beyond Landlord's control and delays in the making of insurance adjustments by landlord; and Tenant shall have no right to terminate this Lease except as herein provided. Landlord shall not be responsible for restoring or repairing leasehold improvements installed by or paid for by Tenant.

(c)     In the event of either of the elections to terminate, this Lease shall be deemed to terminate on the date of the receipt of the notice of election and all rentals shall be paid up to the date. Tenant shall have no claim against Landlord for the value of any unexpired term of this Lease.

(d)     In any case where damage to the building improvement shall materially affect the Leased Premises so as to render them unsuitable in whole or in part for the purposes for which    they are demised hereunder, then, a portion of the rent based upon the amount of the extent to which the Leased Premises are rendered unsuitable shall be abated until repaired or restored.

    19.   **Casualty Insurance:** Landlord shall at all times during the term of this Lease maintain a policy or policies of insurance, insured by and binding upon solvent insurance company, insuring the building improvement against loss or damage by fire, explosion or other hazards and contingencies for the full insurable value; provided, that Landlord shall not be obligated in any way or manner to insure any personal property of Tenant which Tenant may have upon or within the Leased Premises or any fixtures installed by or paid for by Tenant upon or within the Leased Premises or any additional improvements which Tenant may construct on the Leased Premises. Tenant will provide, at its sole cost, fire and extended coverage insurance covering all Tenant's improvements and Tenant's personal property.

    21.   **Public Liability Insurance:** Tenant, at all times during the term of this Lease, shall keep in full force and effect at its expense a policy or policies of general public liability insurance with respect to the leased premises and the business of Tenant, with a single limit of not less than Two Million Dollars in respect to each occurrence and a total limit of not less than Five Million Dollars for all aggregate claims; and Five Hundred Thousand Dollars with respect to damage to property. Such policy or policies shall name Landlord as an additional insured and shall provide that then (10) days written notice must be given to Landlord prior to cancellation thereof. Tenant shall furnish evidence satisfactory to Landlord prior to the Commencement Date of this lease that such coverage is in full force and effect.

    22.   **Eminent Domain:** In the event of any eminent domain or condemnation proceeding or private sale in lieu thereof in respect to the Leased Premises during the term thereof, the following provisions shall apply:

(a)     If the whole of the Leased Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the term of the Lease shall cease and terminate as of the date possession shall be taken in such

CONFIDENTIAL

proceeding and all rental shall be paid up to that date.

(b) If any part constituting less than the whole of the Leased Premises shall be acquired or condemned as aforesaid, and in the event that said partial taking or condemnation shall materially affect the Leased Premises so as to render the Leased Premises unsuitable for the business of the Tenant, in the reasonable opinion of Landlord, then the term of this lease shall cease and terminate as of the date possession shall be taken by the condemning authority and rent shall be paid to the date of such termination.

In the event of a partial taking or condemnation of the Leased Premises which shall not materially affect the Leased Premises so as to render the Leased Premises unsuitable for the business of the Tenant, in the reasonable opinion of the Landlord, this Lease shall continue in full force and affect but with a proportionate abatement of the Base Rental and additional rent based on the portion, if any, of the Leased Premises taken. Landlord reserves the right, at is option, to restore the building and the Leased Premises to substantially the same condition as they were prior to such condemnation. In such event, landlord shall give written notice to Tenant, within thirty (30) days following the date possession shall be taken by the condemning authority, of Landlord's intention to restore. Upon Landlord's notice of election to restore, Landlord shall commence restoration and shall restore the building and the Leased Premises with reasonable promptness and Tenant shall have no right to terminate this lease except as herein provided. Upon completion of such restoration, the rent shall be adjusted based upon the portion, if any, of the Leased Premises restored.

(c) All damages in the event of any condemnation shall belong to the Landlord, however, Tenant shall have the right to claim and recover from the condemning authority, but not from Landlord, such compensation as may be separately awarded or recoverable by Tenant in Tenant's own right on account of any and all damage to Tenant's business by reason of the condemnation and for or on account of any cost or loss to which Tenant might be put in removing Tenant's merchandise, furniture, fixtures, leasehold improvements and equipment.

23. **Non-payment of Rent, Defaults**: If any one or more of the following occurs: (1) Tenant shall fail to pay any installment of rent or any other payment due from Tenant to Landlord and shall continue unpaid in whole or in part more than ten (10) days after same is due and payable; (2) Tenant shall violate or default on any of the other covenants, agreements, stipulations or conditions herein, and such violation or default shall continue for a period of thirty (30) days after written notice from Landlord of such violation or default, provided, however, that if such default or violation is of such a nature as to reasonably require more than thirty (30) days to cure, then Tenant shall be entitled to such additional time as is reasonable necessary to cure said default or violation (except for any violation of Section 34 in which case Tenant shall have no right to cure); or (3) if Tenant shall commence or have commenced against Tenant proceedings under a bankruptcy, receivership, insolvency or similar type of action, and as often as any said event shall occur, then it shall be optional for Landlord to cure said default at Tenant's sole cost and expense, in which event any cost incurred by Landlord in curing said default shall become immediately due and payable from Tenant or to declare this Lease Agreement forfeited and the said term ended, and subject to applicable Massachusetts law, to re-

CONFIDENTIAL

enter the Leased Premises, with or without process of law, using such force as may be necessary to remove all persons or chattels therefrom, and Landlord shall not be liable for damages by reason of such re-entry or forfeiture; but notwithstanding re-entry by landlord or forfeiture or termination of this Lease Agreement, the liability of Tenant for the rent and all other sums provided for herein shall not be relinquished or extinguished for the balance of the Term of this Lease Agreement. Tenant shall be responsible for, in addition to the rentals and other sums agreed to be paid hereunder, such additional sums as the Court may adjudicate as reasonable attorney's fees in any suit or action instituted by Landlord to enforce the provisions of this Lease, or the collection of the rentals due Landlord hereunder. Tenant shall also be liable to Landlord for the payment of interest at the rate of 12% per annum (or such maximum amount permitted by law, whichever is the lesser) on all rentals and other sums due Landlord hereunder not paid within ten (10) days from the date same became due and payable.

24.   **Surrender**: On the last day of the Term of this Lease Agreement or on the sooner termination thereof in accordance with the terms hereof, Tenant shall peaceably surrender the Leased Premises broom-clean and in the same condition and repair received. On or before said last day, Tenant shall, at its expense, remove all of its trade fixtures, personal property and equipment and signs from the Leased Premises, repairing any damage caused thereby, and any property not removed shall be deemed abandoned. All alterations, additions and fixtures other than Tenant's equipment, which have been made or installed by either Landlord or Tenant upon the Leased Premises shall remain as Landlord's property and shall be surrendered with the Leased Premises as a part thereof, or any alterations, additions or improvements installed by Tenant shall be removed by Tenant, at the option of Landlord, in which event Tenant shall at its expense repair any damaged caused thereby. If the Leased Premises are not surrendered at the end of the Term or the sooner termination thereof, Tenant shall indemnify Landlord against loss or liability resulting from delay by Tenant in so surrendering the Leased Premises, including, without limitation, claims made by any succeeding tenant founded on such delay. Tenant shall promptly surrender all keys for the Leased Premises to Landlord at the place then fixed for payment of rental and shall inform landlord of combinations on any locks and safes on the Leased Premises.

25.   **Holding Over**: Deliberately Omitted.

26.   **Subordination to Mortgage**: Tenant agrees that this Lease shall be subordinate to any first mortgage that may now or hereafter be placed upon the Leased Premises or any part thereof, and to any and all advances to be made thereunder, and to the interest thereon, and all renewals, replacements, and extensions thereof. In confirmation of such subordination, Tenant shall promptly execute and deliver any reasonable instrument, in recordable form, as required by Landlord's mortgagee. In the event of any mortgagee electing to have the Lease Agreement a prior encumbrance to its mortgage, then in such event upon such mortgagee notifying Tenant to that effect, this Lease Agreement shall be deemed prior in encumbrance to the said mortgage, whether this Lease Agreement is dated prior to or subsequent to the date of said mortgage.

27.   **Estoppel Certificates**: Tenant agrees, at Landlord's request, to promptly execute either an estoppel certificate addressed to any mortgagee of Landlord or any purchaser of Landlord's interest or a third party agreement among Landlord, Tenant and such mortgagee(s)

CONFIDENTIAL

certifying as to such facts (if true) and agreeing to such notice provisions and other matters as may be reasonably required by landlord or Landlord's mortgagee.

**28.   Attorney's Fees:** In the event either party places the enforcement of this Lease or any part thereof, or the collection of any rent due, or to become due hereunder, or recovery of the possession of the Leased Premises in the hands of an attorney, or file suit upon the same, the non-prevailing (or defaulting) party shall pay the other parties reasonable attorney's fees and court costs as any court shall deem reasonable and equitable.

**29.   Notices:** All rent and other payments required to be made by Tenant shall be payable to Landlord at the address set forth below; or any other address landlord may specify from time to time by written notice delivered to Tenant.  All payments required to be made by landlord to Tenant shall be payable to Tenant at the address set forth below, or at any other address within the United States as Tenant may specify from time to time by written notice.  Any written notice or document required or permitted to be delivered by this Lease shall be deemed to be delivered (whether or not actually received) when deposited in United States mail, postage paid, certified mail, return receipt requested, addressed to the parties at their respective address set out below:

| **TENANT** | **LANDLORD** |
|---|---|
| Sparrell Funeral Service, Inc. | McNamara Associates, LLC |
| 30 Central Street | 29 Priscilla Road |
| Norwell, MA02061 | Chestnut Hill, MA 02467 |
| Attention:  Robert  R. McNamara, President | Attention:  John B. McNamara, Manager |

**30.   Successors and Assignees:** This lease shall be binding upon and inure to the benefit of Landlord, it successors and assignees and shall be binding upon and inure to the benefit of Tenant, its successors, and to the extend assignments may be approved by Landlord hereunder, Tenants assigns.

**31.   Rights Cumulative; Governing Law:** All rights and remedies of Landlord under this Lease shall be cumulative and none shall exclude any of the rights or remedies allowed by law; and this Lease is declared to be a Commonwealth of Massachusetts contract, and all of the terms hereof shall be construed according to the laws of said state.

**32.   Commissions:** Neither party has dealt with any broker in connection with this Lease.  Each party shall hold the other harmless from and against any liability in respect thereto.

**33.   Authority:** Each party represents and warrants to the other that the person signing this Lease is duly authorized to do so on behalf of the Landlord or Tenant, as appropriate.

**34.   Guarantor.** Tenant's obligations under this Lease shall be fully and unconditionally guaranteed by Robert R. McNamara, as Guarantor (the "**Guarantor**") pursuant

**CONFIDENTIAL**

to a separate Lease Guaranty document.  Furthermore, the Guarantor shall maintain majority control of both the equitable and voting interests in the Tenant for the duration of this Lease as the same may be extended or renewed.  Guarantor's failure to do so shall constitute an event of default under the Lease.

**IN WITNESS WHEREOF,** the respective parties hereto have caused this Lease to be executed as of the day and year first above written.

**LANDLORD:**                                    **TENANT:**

**McNAMARA ASSOCIATES,  LLC**        **SPARRELL FUNERAL SERVICE, INC.**

By:  _____            By:  _____
     John B. McNamara, Manager                Robert R. McNamara, President

Date:  _____          Date:  _____

CONFIDENTIAL

## Schedule A

### Property Description

30 Central Street, Norwell, MA
1 Summer Street, Cohasset, MA


## PARCEL ONE – 30 CENTRAL STREET, NORWELL

The premises, with the buildings thereon, situated in Norwell, Plymouth County, Massachusetts, as shown on a plan entitled "Plan of Land on Central Street, Mill Lane, Norwell", Scale 1"-40', dated November 14, 1972, prepared by Loring H. Jacobs and Assoc., Inc., 687 Main Street, Norwell, Mass., which plan is recorded with the Plymouth County Registry of Deeds as Plan No. 72-1235, in Plan Book 16, Page 1069. Said parcel is more fully described as follows:

WESTERLY by Central Street by four courses, 173.74 feet, 66.17 feet, 46.21 feet, and 29.52 feet, respectively; NORTHERLY BY Mill Land, 131.10 feet; EASTERLY by land now or formerly of Dionne, by four courses, 88.77 feet, 66.93 feet, 96.19 feet, and 90.52 feet, respectively; and SOUTHERLY by land now or formerly of Nickerson, 288.12 feet.

Containing 61,704 square feet (1.42 acres) according to said plan.

Being the same premises conveyed to McNamara Associates LLC by deed of John B. McNamara and Robert R. McNamara dated July 28, 1999, recorded with the Plymouth County Registry of Deeds in Book 17713, Page 125.


## PARCEL TWO – 1 SUMMER STREET, COHASSET

A certain parcel of land with the building thereon situated on the easterly side of South Main Street and on the southerly side of Summer Street in Cohasset, Norfolk County, Massachusetts, as shown on "Plan of Land in Cohasset, Mass., dated August 1935 by Lewis W. Perkins, Eng'r" and bounded northerly by said Summer Street, as shown on said plan, one hundred seventy-three and 21/100 (173.21) feet; westerly by South Main Street, as shown on said plan, by two courses, the first by a slightly curved line and measuring forty-two and 47/100 (42.47) feet, and one hundred and 31/100 (100.31), respectively; southerly by land now or formerly of one Tilden, as shown on said plan, one hundred eighty and 22/100 (180.22) feet; and easterly by land now or formerly of said Tilden, one hundred thirty-four and 78/1100 (134.78) feet.

Containing 27,055 square feet of land according to said plan and be any or all of said measurements more or less and however otherwise said premises may be bounded, measured, and described.

MCT:262622.6

**CONFIDENTIAL**

Subject to and with the benefit of the terms and conditions of an Easement Agreement between McNamara Associates LLC and Edward E. and Sharon T.S. Chase dated June 30, 2009, recorded at Book 26847, Page 335.

Subject to a twenty foot wide sewer easement in favor of Jane B. Sullivan recorded at Book 14472, Page 448.

Subject to and with the benefit of a Decision of the Town of Cohasset Zoning Board of Appeals recorded at Book 4111, Page 357.

Being the same premises convey to McNamara Associates LLC by deed of John B. McNamara and Robert R. McNamara dated July 28, 1999, recorded with the Norfolk County Registry of Deeds in Book 13624, Page 552.

MCT:262622.6

# EXHIBIT E

Bk 34503 Pg388 #98451
09-27-2016 @ 09:00a

### QUITCLAIM DEED

McNamara Associates, LLC, a Massachusetts limited liability company of Norwell, Plymouth County, Massachusetts for consideration of Six Hundred and Sixty Thousand ($660,000.00) Dollars, grant to Sparrell Funeral Service Inc., Norwell, Plymouth County, Massachusetts, with **quitclaim covenants,**

A certain parcel of land with the buildings thereon situated on the easterly side of South Main Street and on the southerly side of Summer Street in Cohasset, Norfolk County, Massachusetts, as shown on "Plan of Land in Cohasset, Mass., dated August 1935 by Lewis W. Perkins, Eng'r", and bounded Northerly by said Summer Street, as shown on said plan, one hundred seventy three and 21/100 (173.21) feet; Westerly by South Main Street, as shown on said plan, by two courses, the first by a slightly curved line and measuring  forty two and 47/100 (42.47) feet, and one hundred and 31/100 (100.31) feet, respectively; Southerly by land now or formerly of one Tilden, as shown on said plan, one hundred eighty and 22/100 (180.22) feet; and Easterly by land now or formerly of said Tilden, one hundred thirty four and 78/100 (134.78) feet.

Containing 27,055 square feet of land, according to said plan and be any or all of said measurements more or less, and however otherwise said premises may be bounded, measured, and described.

The Grantor is not classified for the current taxable year as a corporation for federal income tax purposes.

For title, see deed recorded with Norfolk County Registry of Deeds in Book 13624, Page 552.

Address of subject premises:  1 Summer Street, Cohasset, MA

In witness whereof, McNamara Associates, LLC has caused Its authorized signatory to sign in Its name and behalf this  26 day of September, 2016.

McNamara Associates, LLC

By: *John B. McNamara*
John B. McNamara, Its Manager

### COMMONWEALTH OF MASSACHUSETTS

**PLYMOUTH, SS.**

On this 26th day of September, 2016, before me, the undersigned notary public, personally appeared John B. McNamara, Manager of McNamara Associates, LLC, a Massachusetts limited liability company, and proved to me through satisfactory evidence of identification, which was  X  photographic identification with signature issued by a federal or

Page 1 of 2

Exhibit 10
Date 7-7-17
D.A. Gill Brown
Gill Reporting, Inc.

*1 Summer St. Cohasset*

MASSACHUSETTS STATE EXCISE TAX
Norfolk Registry of Deeds
Date: 09-27-2016 @ 09:00am
Ctl#: 177          Doc#: 98451
Fee: $3,009.60  Cons: $660,000.00

WILLIAM P. O'DONNELL, REGISTER
NORFOLK COUNTY REGISTRY OF DEEDS
RECEIVED & RECORDED ELECTRONICALLY

state governmental agency, _____ oath or affirmation of a credible witness who is personally
known to me and who has stated to me that he/she is unaffected by the document or transaction
and that he/she knows the person(s) whose name(s) is/are signed on the preceding/attached
document, _____ personal knowledge of the undersigned, to be the person(s) whose name is/are
signed on the preceding/attached document and acknowledged to me that he signed it voluntarily
for its stated purpose as the Manager of McNamara Associates, LLC

Notary Public -
My commission expires:

ANTHONY M. METAXAS
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
November 3 , 2017

S:\K.H Documents\McNamara, Robert\Deed to B McNamara (Cohasset) (9-16).docx

# EXHIBIT F

*** Electronic Recording ***

Doc#: 00085738
Bk#47814 Pg: 38 Page: 1 of 2
Recorded: 09/27/2016 11:40 AM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
MASSACHUSETTS EXCISE TAX
Plymouth District ROD #11 001
Date:  09/27/2016 11:40 AM
Ctrl# 095867 03272 Doc# Plymouth County Registry
Fee: $2,006.40 Cons: $440,000.00
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## QUITCLAIM DEED

McNamara Associates, LLC, a Massachusetts limited liability company of Norwell, Plymouth County, Massachusetts for consideration of Four Hundred and Forty Thousand ($440,000.00) Dollars, grant to Sparrell Funeral Service Inc. of Norwell, Plymouth County, Massachusetts, with **quitclaim covenants,**

The premises, with the buildings thereon, situated in Norwell, Plymouth County, Massachusetts, containing 1.42 acres as shown on a plan entitled "Plan of Land on Central Street and Mill Lane, Norwell, scale 1" = 40' dated November 14, 1972, Loring H. Jacobs and Assoc., Inc. 687 Main Street, Norwell, Mass." Said parcel is more fully described as follows:

WESTERLY by Central Street, by four courses, 173.74 feet, 66.17 feet, 46.21 feet and 29.52 feet respectively;

NORTHERLY by Mill Lane, 131.10 feet;

EASTERLY by land now or formerly of Dionne, by four courses, 88.77 feet, 66.93 feet, 96.19 feet and 90.52 feet, respectively;

SOUTHERLY by land now or formerly of Nickerson, 228.12 feet.

The Grantor is not classified for the current taxable year as a corporation for federal income tax purposes.

For title, see deed recorded with Plymouth County Registry of Deeds in Book 17713, Page 125.

Address of subject premises: 30 Central Street, Norwell, MA

In Witness whereof, McNamara Associates, LLC has caused Its authorized signatory to sign in Its name and behalf this _26_ day of September, 2016.

McNamara Associates, LLC

By: _John B. McNamara_
John B. McNamara, Its Manager

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, SS.

On this _26_ day of September, 2016, before me, the undersigned notary public, personally appeared **John B. McNamara,** Manager of McNamara Associates, LLC, a Massachusetts limited liability company, and proved to me through satisfactory evidence of identification, which was _his_ photographic identification with signature issued by a federal or state governmental agency, _nil_ oath or affirmation of a credible witness who is personally known to me and who has stated to me that he/she is unaffected by the document or transaction and that he/she knows the person(s) whose name(s) is/are signed on the preceding/attached document, _____ personal knowledge of the undersigned, to be the person(s) whose name is/are

30 Central St Norwell

Exhibit 3
Date 7-7-17

D.A. Gill Brown
Gill Reporting, Inc.

Bk: 47514 Pg: 39

signed on the preceding/attached document and acknowledged to me that he signed it voluntarily
for its stated purpose as the Manager of McNamara Associates, LLC

_____
Notary Public
My commission expires:

ANTHONY M. METAXAS
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
November 3, 2017

S:\KH Documents\McNamara, Robert\Deed to B McNamara (Norwell) (9-16).docx

# EXHIBIT G

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | Robert | R. | McNamara |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Massachusetts

Case number   17-11329

☐ Check if this is an amended filing

## Official Form 106A/B

# Schedule A/B: Property

12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☒ No. Go to Part 2.
   ☐ Yes. Where is the property?

**1.1.** _____
Street address, if available, or other description

_____

_____

_____
City        State   ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$_____        $_____

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number: _____

If you own or have more than one, list here:

**1.2.** _____
Street address, if available, or other description

_____

_____

_____
City        State   ZIP Code

_____
County

**What is the property?** Check all that apply.
☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**    **Current value of the portion you own?**
$_____        $_____

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

☐ Check if this is community property (see instructions)

Other information you wish to add about this item, such as local property identification number: _____

Debtor 1    Robert          R.              McNamara                                    Case number (if known)    17-11329
            First Name    Middle Name    Last Name

**1.3.** _____
Street address, if available, or other description

_____

_____

_____
City                State        ZIP Code

_____

_____
County

**What is the property?** Check all that apply.

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other _____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number: _____

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?      Current value of the portion you own?

$_____      $_____

**Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.**

_____

☐ Check if this is community property (see instructions)

2. **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.** ....................................➔   $_____

---

## Part 2:    Describe Your Vehicles

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
☒ Yes

**3.1.** Make:    Jeep

Model:    Cherokee

Year:    2014

Approximate mileage:    38000

Other information:

_____

**Who has an interest in the property?** Check one.

☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?      Current value of the portion you own?

$ 16,835.00      $ 16,835.00

If you own or have more than one, describe here:

**3.2.** Make:    _____

Model:    _____

Year:    _____

Approximate mileage:    _____

Other information:

_____

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this is community property (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

Current value of the entire property?      Current value of the portion you own?

$_____      $_____

Case 18-01022   Doc 1-1   Filed 02/14/18   Entered 02/14/18 10:14:18   Desc Exhibit
Case 17-11329   Doc 12   Filed 04/28/17   Entered 04/28/17 14:43:28   Desc Main
Document   Page 3 of 32

Debtor 1    Robert    R.    McNamara AKR    Case number (if known)   17-11329
            First Name    Middle Name    Last Name

3.3. Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  **Current value of the portion you own?**

$_____  $_____

3.4. Make: _____

Model: _____

Year: _____

Approximate mileage: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  **Current value of the portion you own?**

$_____  $_____

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

☐ No
☒ Yes

4.1. Make: _Angler_

Model: _220C_

Year: _1999_

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  **Current value of the portion you own?**

$_____  $ 300.00

If you own or have more than one, list here:

4.2. Make: _____

Model: _____

Year: _____

Other information:

**Who has an interest in the property?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ **Check if this is community property** (see instructions)

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

**Current value of the entire property?**  **Current value of the portion you own?**

$_____  $_____

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here** ................................................→  $ 17,135.00

| Debtor 1 | Robert | R. | McNamara | Case number *(if known)* 17-11329 |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

| **Part 3:** | **Describe Your Personal and Household Items** |
|---|---|

Do you own or have any legal or equitable interest in any of the following items?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☒ No
   ☐ Yes. Describe......... $_____

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☒ No
   ☐ Yes. Describe......... $_____

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ☒ No
   ☐ Yes. Describe......... $_____

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments
   ☒ No
   ☐ Yes. Describe......... $_____

10. **Firearms**
    *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
    ☒ No
    ☐ Yes. Describe......... $_____

11. **Clothes**
    *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
    ☐ No
    ☒ Yes. Describe......... Men's Clothing $300.00

12. **Jewelry**
    Examples: Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
    ☐ No
    ☒ Yes. Describe......... Watch $100.00

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ☒ No
    ☐ Yes. Describe......... $_____

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ☒ No
    ☐ Yes. Give specific information............. $_____

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ................................➔ $400.00

| Debtor 1 | Robert | R. | McNamara | Case number *(if known)* | 17-11329 |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

---

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

Do you own or have any legal or equitable interest in any of the following?

**Current value of the portion you own?**
Do not deduct secured claims or exemptions.

**16. Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☒ Yes................................................................................................................... Cash: ........................ $50.00

**17. Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar institutions. If you have multiple accounts with the same institution, list each.

☐ No
☒ Yes......................

Institution name:

| | | |
|---|---|---|
| 17.1. Checking account: | Coastal Heritage Bank | $434.54 |
| 17.2. Checking account: | | $ |
| 17.3. Savings account: | | $ |
| 17.4. Savings account: | | $ |
| 17.5. Certificates of deposit: | | $ |
| 17.6. Other financial account: | | $ |
| 17.7. Other financial account: | | $ |
| 17.8. Other financial account: | | $ |
| 17.9. Other financial account: | | $ |

**18. Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts

☒ No
☐ Yes.................

Institution or issuer name:

| | |
|---|---|
| | $ |
| | $ |
| | $ |

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**

☐ No
☒ Yes. Give specific information about them. ......................

| Name of entity: | % of ownership: | |
|---|---|---|
| Sparrell Funeral Service, Inc. | 100 % | $0.00 |
| | % | $ |
| | % | $ |

---

Debtor 1   Robert    R.    McNamara     Case number *(if known)* 17-11329

First Name    Middle Name    Last Name

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**

*Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
*Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.

☒ No

☐ Yes. Give specific
    information about
    them. ....................

Issuer name:

$_____

$_____

$_____

**21. Retirement or pension accounts**

*Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans

☒ No

☐ Yes. List each
    account separately..

Type of account:    Institution name:

401(k) or similar plan:    _____    $_____

Pension plan:    _____    $_____

IRA:    _____    $_____

Retirement account:    _____    $_____

Keogh:    _____    $_____

Additional account:    _____    $_____

Additional account:    _____    $_____

**22. Security deposits and prepayments**

Your share of all unused deposits you have made so that you may continue service or use from a company

*Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications
companies, or others

☒ No

☐ Yes...........................

Institution name or individual:

Electric:    _____    $_____

Gas:    _____    $_____

Heating oil:    _____    $_____

Security deposit on rental unit: _____    $_____

Prepaid rent:    _____    $_____

Telephone:    _____    $_____

Water:    _____    $_____

Rented furniture:    _____    $_____

Other:    _____    $_____

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)

☒ No

☐ Yes...........................

Issuer name and description:

$_____

$_____

$_____

Debtor 1   Robert     R.     McNamara                        Case number *(if known)*   17-11329
           First Name   Middle Name   Last Name

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).

    ☒ No
    ☐ Yes ................................   Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

    _____   $_____
    _____   $_____
    _____   $_____

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**

    ☐ No
    ☒ Yes. Give specific
    information about them...   | Irrevocable Burial Trust |   $0.00

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements

    ☒ No
    ☐ Yes. Give specific
    information about them...   |                          |   $_____

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses

    ☐ No
    ☒ Yes. Give specific
    information about them...   | Board of Funeral Directors and Embalmers License, |   $0.00

**Money or property owed to you?**                                           **Current value of the portion you own?**
                                                                            Do not deduct secured claims or exemptions.

28. **Tax refunds owed to you**

    ☒ No
    ☐ Yes. Give specific information
    about them, including whether
    you already filed the returns                      Federal:   $_____
    and the tax years. ......................          State:     $_____
                                                       Local:     $_____

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement

    ☒ No
    ☐ Yes. Give specific information. .............
                                                       Alimony:             $_____
                                                       Maintenance:         $_____
                                                       Support:             $_____
                                                       Divorce settlement:  $_____
                                                       Property settlement: $_____

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation,
    Social Security benefits; unpaid loans you made to someone else

    ☒ No
    ☐ Yes. Give specific information. .............
                                                                            $_____

Case 18-01022   Doc 1-1   Filed 02/14/18   Entered 02/14/18 10:14:18   Desc Exhibit
Case 17-11329   Doc 12   Filed 04/28/17   Entered 04/28/17 14:43:28   Desc Main
Document   Page 8 of 52

Debtor 1   Robert      R.      McNamara      Case number *(if known)*   17-11329
First Name   Middle Name   Last Name

**31. Interests in insurance policies**
*Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance

☒ No

☐ Yes. Name the insurance company
of each policy and list its value. ....

| Company name: | Beneficiary: | Surrender or refund value: |
|---|---|---|
| | | $ |
| | | $ |
| | | $ |

**32. Any interest in property that is due you from someone who has died**
If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.

☒ No

☐ Yes. Give specific information. ............      $

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue

☐ No

☒ Yes. Describe each claim. ....................   Loss of consortium claim v. V. C. Spirito Co.   $0.00

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**

☐ No

☒ Yes. Describe each claim. ....................   Counterclaim v Bank of Canton   $0.00

**35. Any financial assets you did not already list**

☒ No

☐ Yes. Give specific information. ............      $

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here .............................................................   →   $484.54

---

| Part 5: | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |
|---|---|

**37. Do you own or have any legal or equitable interest in any business-related property?**

☒ No. Go to Part 6.

☐ Yes. Go to line 38.

Current value of the
portion you own?
Do not deduct secured claims
or exemptions.

**38. Accounts receivable or commissions you already earned**

☒ No

☐ Yes. Describe...........      $

**39. Office equipment, furnishings, and supplies**
*Examples:* Business-related computers, software, modems, printers, copiers, fax machines, rugs, telephones, desks, chairs, electronic devices

☒ No

☐ Yes. Describe........      $

Debtor 1   Robert   R.   McNamara   Case number (if known)   17-11329
First Name   Middle Name   Last Name

**40. Machinery, fixtures, equipment, supplies you use in business, and tools of your trade**

☒ No
☐ Yes. Describe ........   $_____

**41. Inventory**

☒ No
☐ Yes. Describe ......   $_____

**42. Interests in partnerships or joint ventures**

☒ No
☐ Yes. Describe ........   Name of entity:   % of ownership:

_____   ____%   $_____
_____   ____%   $_____
_____   ____%   $_____

**43. Customer lists, mailing lists, or other compilations**

☒ No
☐ Yes. Do your lists include personally identifiable information (as defined in 11 U.S.C. § 101(41A))?

    ☒ No
    ☐ Yes. Describe.........   $_____

**44. Any business-related property you did not already list**

☒ No
☐ Yes. Give specific
    information .........   _____   $_____
    _____   $_____
    _____   $_____
    _____   $_____
    _____   $_____
    _____   $_____

**45. Add the dollar value of all of your entries from Part 5, including any entries for pages you have attached for Part 5. Write that number here** .................................................. →   $ 0.00

| Part 6: | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest in. |
|---|---|
| | If you own or have an interest in farmland, list it in Part 1. |

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**

☒ No. Go to Part 7.
☐ Yes. Go to line 47.

Current value of the
portion you own?

Do not deduct secured claims
or exemptions.

**47. Farm animals**

*Examples*: Livestock, poultry, farm-raised fish

☒ No
☐ Yes.....................   $_____

Case 18-01022   Doc 1-1   Filed 02/14/18   Entered 02/14/18 10:14:18   Desc Exhibit
Case 17-11329   Doc 12   Filed 04/28/17   Entered 04/28/17 14:43:28   Desc Main
Document   Page 10 of 52

Debtor 1    Robert         R.           McNamara                          Case number (if known)  17-11329
          First Name    Middle Name    Last Name

48. **Crops—either growing or harvested**

☒ No
☐ Yes. Give specific
   information. ........... [                    ]    $_____

49. **Farm and fishing equipment, implements, machinery, fixtures, and tools of trade**

☒ No
☐ Yes......................... [                    ]    $_____

50. **Farm and fishing supplies, chemicals, and feed**

☒ No
☐ Yes......................... [                    ]    $_____

51. **Any farm- and commercial fishing-related property you did not already list**

☒ No
☐ Yes. Give specific
   information. ........... [                    ]    $_____

52. **Add the dollar value of all of your entries from Part 6, including any entries for pages you have attached
for Part 6. Write that number here** ...........................................................................................→   $0.00

---

**Part 7:**   **Describe All Property You Own or Have an Interest in That You Did Not List Above**

53. **Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership

☒ No
☐ Yes. Give specific
   information. ...........

   $_____
   $_____
   $_____

54. **Add the dollar value of all of your entries from Part 7. Write that number here** .....................................→   $_____

---

**Part 8:**   **List the Totals of Each Part of this Form**

55. **Part 1: Total real estate, line 2** ...........................................................................................→   $0.00

56. **Part 2: Total vehicles, line 5**                                    $17,135.00

57. **Part 3: Total personal and household items, line 15**              $400.00

58. **Part 4: Total financial assets, line 36**                          $484.54

59. **Part 5: Total business-related property, line 45**                 $0.00

60. **Part 6: Total farm- and fishing-related property, line 52**        $0.00

61. **Part 7: Total other property not listed, line 54**               + $0.00

62. **Total personal property. Add lines 56 through 61.** ...................   $18,019.54     Copy personal property total →  + $18,019.54

63. **Total of all property on Schedule A/B. Add line 55 + line 62.** ...........................................................   $18,019.54

**Fill in this information to identify your case:**

| | | | | |
|---|---|---|---|---|
| Debtor 1 | Robert | R. | McNamara | |
| | First Name | Middle Name | Last Name | |
| Debtor 2 | | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name | |

United States Bankruptcy Court for the: Massachusetts

Case number: 17-11329
(If known)

☐ Check if this is an amended filing

## Official Form 106C

# Schedule C: The Property You Claim as Exempt

04/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:   Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions. 11 U.S.C. § 522(b)(3)

   ☒ You are claiming federal exemptions. 11 U.S.C. § 522(b)(2)

2. **For any property you list on** *Schedule A/B* **that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own<br><br>Copy the value from *Schedule A/B* | Amount of the exemption you claim<br><br>*Check only one box for each exemption.* | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: See Attachment 1<br>Line from *Schedule A/B*: 3.1 | $ 16,835.00 | ☒ $ 7,287.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(2)<br>11 USC § 522(d)(5) |
| Brief description: 1999 Angler 220C<br>Line from *Schedule A/B*: 4.1 | $ 300.00 | ☒ $ 300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| Brief description: Men's Clothing<br>Line from *Schedule A/B*: 11 | $ 300.00 | ☒ $ 300.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(3) |

3. **Are you claiming a homestead exemption of more than $160,375?**

   (Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.)

   ☒ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

   ☐ No

   ☐ Yes

Debtor 1   **Robert R.  McNamara**
First Name   Middle Name   Last Name

Case number (if known)   17-11329

| **Part 2:** | **Additional Page** |
|---|---|

| Brief description of the property and line on Schedule A/B that lists this property | Current value of the portion you own<br><br>Copy the value from Schedule A/B | Amount of the exemption you claim<br><br>Check only one box for each exemption | Specific laws that allow exemption |
|---|---|---|---|
| Brief description: Watch<br>Line from Schedule A/B: 12 | $ 100.00 | ☒ $ 100.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(4) |
| Brief description: Cash<br>Line from Schedule A/B: 16 | $ 50.00 | ☒ $ 50.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| Brief description: See Attachment 2<br>Line from Schedule A/B: 17.1 | $ 434.54 | ☒ $ 434.54<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(5) |
| Brief description: See Attachment 3<br>Line from Schedule A/B: 33 | $ Unknown | ☒ $ 23,675.00<br>☐ 100% of fair market value, up to any applicable statutory limit | 11 USC § 522(d)(11)(D) |
| Brief description:<br>Line from Schedule A/B: | $ | ☐ $<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description:<br>Line from Schedule A/B: | $ | ☐ $<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description:<br>Line from Schedule A/B: | $ | ☐ $<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description:<br>Line from Schedule A/B: | $ | ☐ $<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description:<br>Line from Schedule A/B: | $ | ☐ $<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description:<br>Line from Schedule A/B: | $ | ☐ $<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description:<br>Line from Schedule A/B: | $ | ☐ $<br>☐ 100% of fair market value, up to any applicable statutory limit | |
| Brief description:<br>Line from Schedule A/B: | $ | ☐ $<br>☐ 100% of fair market value, up to any applicable statutory limit | |

Official Form 106C                Schedule C: The Property You Claim as Exempt                page  2  of  2

## Attachment
### Debtor: Robert R.  McNamara        Case No: 17-11329

Attachment 1

    2014 Jeep Cherokee with 38000 miles.

Attachment 2

    Checking Account with Coastal Heritage Bank

Attachment 3

    Loss of consortium claim v. V. C. Spirito Co.

**Fill in this information to identify your case:**

Debtor 1    Robert R. McNamara
            First Name       Middle Name       Last Name

Debtor 2
(Spouse, if filing) First Name    Middle Name    Last Name

United States Bankruptcy Court for the: Massachusetts

Case number    17-11329
(if known)

☐ Check if this is an
   amended filing

## Official Form 106D

# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct
information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any
additional pages, write your name and case number (if known).

1. **Do any creditors have claims secured by your property?**
   ☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.
   ☒ Yes. Fill in all of the information below.

| **Part 1:** | **List All Secured Claims** |
|---|---|

2. **List all secured claims.** If a creditor has more than one secured claim, list the creditor separately
   for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2.
   As much as possible, list the claims in alphabetical order according to the creditor's name.

|  | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|

**2.1** KeyCorp
Creditor's Name

127 Public Square
Number      Street

Cleveland          OH    See
City            State   ZIP Code

**Who owes the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a
   community debt
Date debt was incurred _____

Describe the property that secures the claim:   $ 9,548.59    $ 16,835.00    $ _____

┌─────────────────────────────────────┐
│ 2014 Jeep Cherokee with 38000 miles. │
└─────────────────────────────────────┘

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☒ An agreement you made (such as mortgage or secured
   car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

**2.2**
Creditor's Name

Number      Street

City            State   ZIP Code

**Who owes the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim relates to a
   community debt
Date debt was incurred _____

Describe the property that secures the claim:   $ _____    $ _____    $ _____

┌─────────────────────────────────────┐
│                                     │
└─────────────────────────────────────┘

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured
   car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset) _____

Last 4 digits of account number ___ ___ ___ ___

Add the dollar value of your entries in Column A  on this page. Write that number here:   $ 9,548.59

Attachment
Debtor: Robert R.  McNamara      Case No: 17-11329


Attachment 1

44114-1306

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Robert R.  McNamara |
| | First Name          Middle Name          Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | Massachusetts |
| Case number (If known) | 17-11329 |

☐ Check if this is an
amended filing

## Official Form 106E/F

# Schedule E/F: Creditors Who Have Unsecured Claims

**12/15**

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims.
List the other party to any executory contracts or unexpired leases that could result in a claim.  Also list executory contracts on *Schedule A/B: Property* (Official Form 106A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G). Do not include any creditors with partially secured claims that are listed in *Schedule D: Creditors Who Hold Claims Secured by Property.* If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List All of Your PRIORITY Unsecured Claims |
|---|---|

**1. Do any creditors have priority unsecured claims against you?**
☐ No. Go to Part 2.
☒ Yes.

**2. List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

(For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|---|
| **2.1** | **Internal Revenue Service** <br> Priority Creditor's Name <br><br> **PO Box 7346** <br> Number      Street <br><br> **Philadelphia     PA         See** <br> City          State     ZIP Code | Last 4 digits of account number  __ __ __ __ <br><br> When was the debt incurred?  _____ | $ 36,736.65 | $ 34,119.68 | $ 2,616.97 |

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☒ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
☒ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

| | | | | | |
|---|---|---|---|---|---|
| **2.2** | **Massachusetts Department of Revenue** <br> Priority Creditor's Name <br><br> **Bankruptcy Unit** <br> Number      Street <br> **PO Box 9554** <br><br> **Boston       MA        02114** <br> City          State     ZIP Code | Last 4 digits of account number  __ __ __ __ <br><br> When was the debt incurred?  _____ | $ 0.00 | $ 0.00 | $ 0.00 |

**Who incurred the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☒ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of PRIORITY unsecured claim:**
☐ Domestic support obligations
☒ Taxes and certain other debts you owe the government
☐ Claims for death or personal injury while you were intoxicated
☐ Other. Specify _____

Debtor 1    Robert R. McNamara
   First Name     Middle Name     Last Name      Case number (if known) 17-11329

**Part 2:** **List All of Your NONPRIORITY Unsecured Claims**

3. **Do any creditors have nonpriority unsecured claims against you?**
☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.
☒ Yes

4. **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3. If you have more than four priority unsecured claims fill out the Continuation Page of Part 2.

| | | Total claim |
|---|---|---|

---

**4.1**   ACS
Nonpriority Creditor's Name

Attn: MEFA Department PO Box 7052
Number      Street

Utica                    NY          13504-7052
City                     State       ZIP Code

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☒ No
☐ Yes

Last 4 digits of account number __ __ __ __          $ 15,864.78

When was the debt incurred?          _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☒ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify _____

---

**4.2**   AES CRedit
Nonpriority Creditor's Name

PO Box 61047
Number      Street

Harrisburg               PA          17106-1047
City                     State       ZIP Code

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☒ No
☐ Yes

Last 4 digits of account number __ __ __ __          $ 30,434.64

When was the debt incurred?          _____

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☒ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify _____

---

**4.3**   Bank of Canton
Nonpriority Creditor's Name

490 Turnpike Street
Number      Street

Canton                   MA          02021
City                     State       ZIP Code

**Who incurred the debt?** Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☒ No
☐ Yes

Last 4 digits of account number __ __ __ __          $ 157,000.00

When was the debt incurred?          _____

**As of the date you file, the claim is:** Check all that apply.
☒ Contingent
☒ Unliquidated
☒ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify _____

---

Debtor 1 _____ _____ _____   Case number (if known) __ 17-11329

| **Part 2:** | **Your NONPRIORITY Unsecured Claims —Continuation Page** |
|---|---|

| After listing any entries on this page, number them beginning with 4.5, followed by 4.6, and so forth. | Total claim |
|---|---|

**4.4**

**Eastern Bank**
Nonpriority Creditor's Name

**265 Franklin Street 2d Floor**
Number        Street

**Boston**            **MA**      **02110**
City                      State      ZIP Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☒ No
☐ Yes

**Last 4 digits of account number** __ __ __ __

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify_____

$ 45,436.37

---

**4.5**

**Harbor One Bank**
Nonpriority Creditor's Name

**770 Oak Street**
Number        Street

**Brockton**            **MA**      **02301**
City                      State      ZIP Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☒ No
☐ Yes

**Last 4 digits of account number** __ __ __ __

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify_____

$ 4,167.12

---

**4.6**

**Live Oak Bank**
Nonpriority Creditor's Name

**1741 Tiburon Drive**
Number        Street

**Wilmington**            **NC**      **26403**
City                      State      ZIP Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

☒ No
☐ Yes

**Last 4 digits of account number** __ __ __ __

**When was the debt incurred?** _____

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify_____

$ See

---

Debtor 1 _____
　　　　　First Name　　Middle Name　　　Last Name

| **Part 2:** | **Your NONPRIORITY Unsecured Claims —Continuation Page** |
|---|---|

| After listing any entries on this page, number them beginning with 4.5, followed by 4.6, and so forth. | Total claim |
|---|---|

**4.7**

Navient
_____
Nonpriority Creditor's Name

PO Box 9500
_____
Number　　　Street

Wilkes-Barre　　　PA　　　18773-9500
_____
City　　　　　　　　State　　ZIP Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☒ No
☐ Yes

Last 4 digits of account number __ __ __ __

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☒ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify_____

$5,163.52

**4.8**

Workers Credit Union
_____
Nonpriority Creditor's Name

815 Main Street
_____
Number　　　Street

Fitchburg　　　MA　　　01420
_____
City　　　　　　　　State　　ZIP Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☒ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☒ No
☐ Yes

Last 4 digits of account number __ __ __ __

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☒ Other. Specify_____

$28,000.00

**4.9**

_____
Nonpriority Creditor's Name

_____
Number　　　Street

_____
City　　　　　　　　State　　ZIP Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

☐ Check if this claim is for a community debt

**Is the claim subject to offset?**
☐ No
☐ Yes

Last 4 digits of account number __ __ __ __

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify_____

$_____

Debtor 1    Robert R. McNamara
First Name    Middle Name    Last Name

Case number (if known) 17-11329

**Part 3:    List Others to Be Notified About a Debt That You Already Listed**

5.  Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For
    example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or
    2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the
    additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Jack Mikels & Associates
Name

1 Batterymarch Park
Number    Street

Quincy, Massachusetts 02169
City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line 4.3 of (*Check one*): ☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line _____ of (*Check one*): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line _____ of (*Check one*): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line _____ of (*Check one*): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line _____ of (*Check one*): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line _____ of (*Check one*): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

---

Name

Number    Street

City    State    ZIP Code

On which entry in Part 1 or Part 2 did you list the original creditor?

Line _____ of (*Check one*): ☐ Part 1: Creditors with Priority Unsecured Claims
☐ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number ___ ___ ___ ___

| Debtor 1 | Robert R. McNamara | | |
| | First Name | Middle Name | Last Name |

Case number (if known) 17-11329

## Part 4: Add the Amounts for Each Type of Unsecured Claim

6. **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159.**
   Add the amounts for each type of unsecured claim.

|  |  | Total claim |
|---|---|---|
| **Total claims from Part 1** | 6a. **Domestic support obligations** | 6a. $0.00 |
| | 6b. **Taxes and certain other debts you owe the government** | 6b. $36,736.65 |
| | 6c. **Claims for death or personal injury while you were intoxicated** | 6c. $0.00 |
| | 6d. **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. + $0.00 |
| | 6e. **Total.** Add lines 6a through 6d. | 6e. $36,736.65 |

|  |  | Total claim |
|---|---|---|
| **Total claims from Part 2** | 6f. **Student loans** | 6f. $51,462.94 |
| | 6g. **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. $0.00 |
| | 6h. **Debts to pension or profit-sharing plans, and other similar debts** | 6h. $0.00 |
| | 6i. **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. + $1,464,603.49 |
| | 6j. **Total.** Add lines 6f through 6i. | 6j. $1,516,066.43 |

Attachment
Debtor: Robert R.  McNamara      Case No: 17-11329

**Attachment 1**

       **19101-7346**

**Attachment 2**

       **1,230,000.00**

| Fill in this information to identify your case: | |
|---|---|
| Debtor | Robert R. McNamara |
| | First Name          Middle Name          Last Name |
| Debtor 2 (Spouse If filing) | First Name          Middle Name          Last Name |
| United States Bankruptcy Court for the: | Massachusetts |
| Case number (If known) | 17-11329 |

☐ Check if this is an amended filing

## Official Form 106G

# Schedule G: Executory Contracts and Unexpired Leases

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1. **Do you have any executory contracts or unexpired leases?**
   ☐ No. Check this box and file this form with the court with your other schedules. You have nothing else to report on this form.
   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Property* (Official Form 106A/B).

2. **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease | State what the contract or lease is for |
|---|---|
| 2.1 Scituate Harbormaster<br>Name<br>100 Cole Parkway<br>Number      Street<br>Scituate          MA      02066<br>City          State      ZIP Code | Marina mooring |
| 2.2 _____<br>Name<br>_____<br>Number      Street<br>_____<br>City          State      ZIP Code | |
| 2.3 _____<br>Name<br>_____<br>Number      Street<br>_____<br>City          State      ZIP Code | |
| 2.4 _____<br>Name<br>_____<br>Number      Street<br>_____<br>City          State      ZIP Code | |
| 2.5 _____<br>Name<br>_____<br>Number      Street<br>_____<br>City          State      ZIP Code | |

Fill in this information to identify your case:

Debtor 1   Robert R.  McNamara
            First Name            Middle Name            Last Name

Debtor 2
(Spouse, if filing)  First Name     Middle Name            Last Name

United States Bankruptcy Court for the: Massachusetts

Case number   17-11329
(if known)

☐ Check if this is an
amended filing

## Official Form 106H

# Schedule H: Your Codebtors

12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

1. **Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

   ☐ No

   ☒ Yes

2. **Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

   ☒ No. Go to line 3.

   ☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

       ☐ No

       ☐ Yes. In which community state or territory did you live? _____. Fill in the name and current address of that person.

       _____
       Name of your spouse, former spouse, or legal equivalent

       _____
       Number        Street

       _____
       City                      State            ZIP Code

3. **In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you.** List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on *Schedule D* (Official Form 106D), *Schedule E/F* (Official Form 106E/F), or Schedule G (Official Form 106G). Use *Schedule D, Schedule E/F, or Schedule G* to fill out Column 2.

| *Column 1:* Your codebtor | *Column 2:* The creditor to whom you owe the debt |
|---|---|
| | Check all schedules that apply: |

**3.1**
Alice McNamara
Name

PO Box 327
Number        Street

Norwell          MA          02061
City              State        ZIP Code

☐ Schedule D, line _____
☒ Schedule E/F, line 4.3
☐ Schedule G, line _____

**3.2**
Alice McNamara
Name

PO Box 327
Number        Street

Norwell          MA          02061
City              State        ZIP Code

☐ Schedule D, line _____
☒ Schedule E/F, line 2.1,
☐ Schedule G, line _____

**3.3**
Shane C. McNamara
Name

272 Chief Justice Cushing Highway
Number        Street

Scituate          MA          02066
City              State        ZIP Code

☐ Schedule D, line _____
☒ Schedule E/F, line 4.1,
☐ Schedule G, line _____

| Debtor 1 | Robert R. McNamara | | | Case number *(if known)* 17-11329 |
|---|---|---|---|---|
| | First Name   Middle Name | | Last Name | |

| | **Additional Page to List More Codebtors** |
|---|---|

| Column 1: **Your codebtor** | Column 2: **The creditor to whom you owe the debt** |
|---|---|

Check all schedules that apply:

**3.4**

Kelly A. Sherman
Name

118 Garvin Road
Number       Street

| Acton | ME | 04001 |
|---|---|---|
| City | State | ZIP Code |

☐ Schedule D, line _____
☒ Schedule E/F, line 4.7,
☐ Schedule G, line _____

**3.5**

Katie M. Furnari
Name

17 Hillside Road
Number       Street

| Hull | MA | 02045 |
|---|---|---|
| City | State | ZIP Code |

☐ Schedule D, line _____
☒ Schedule E/F, line 4.2,
☐ Schedule G, line _____

**3.6**

Sparrell Funeral Service, Inc.
Name

31 Central Street
Number       Street

| Norwell | MA | 02061 |
|---|---|---|
| City | State | ZIP Code |

☐ Schedule D, line _____
☒ Schedule E/F, line 4.4,
☐ Schedule G, line _____

**3.7**

Sparrell Funeral Service, Inc.
Name

31 Central Street
Number       Street

| Norwell | MA | 02061 |
|---|---|---|
| City | State | ZIP Code |

☐ Schedule D, line _____
☒ Schedule E/F, line 4.5,
☐ Schedule G, line _____

**3.8**

Sparrell Funeral Service, Inc.
Name

31 Central Street
Number       Street

| Norwell | Maine | 02061 |
|---|---|---|
| City | State | ZIP Code |

☐ Schedule D, line _____
☒ Schedule E/F, line 4.6,
☐ Schedule G, line _____

**3.9**

Brendan M. McNamara
Name

67 Forest Street
Number       Street

| Norwell | MA | 02061 |
|---|---|---|
| City | State | ZIP Code |

☐ Schedule D, line _____
☒ Schedule E/F, line 4.6,
☐ Schedule G, line _____

**3.10**

Melissa G. McNamara
Name

67 Forest Street
Number       Street

| Norwell | MA | 02061 |
|---|---|---|
| City | State | ZIP Code |

☐ Schedule D, line _____
☒ Schedule E/F, line 4.6,
☐ Schedule G, line _____

**3.11**

Sparrell Funeral Service, Inc.
Name

31 Central Street
Number       Street

| Norwell | MA | 02061 |
|---|---|---|
| City | State | ZIP Code |

☐ Schedule D, line _____
☒ Schedule E/F, line 4.8,
☐ Schedule G, line _____

Debtor 1    Robert R.  McNamara
      First Name     Middle Name     Last Name     Case number *(if known)* 17-11329

## Additional Page to List More Codebtors

| Column 1: Your codebtor | Column 2: The creditor to whom you owe the debt |
|---|---|
| | Check all schedules that apply: |

**3.12**
Brendan M. McNamara
Name

67 Forest Street
Number    Street

Norwell      MA      02061
City      State      ZIP Code

☐ Schedule D, line _____
☒ Schedule E/F, line 4.8,
☐ Schedule G, line _____

**3.13**
Name

Number    Street

City      State      ZIP Code

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.14**
Name

Number    Street

City      State      ZIP Code

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.15**
Name

Number    Street

City      State      ZIP Code

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.16**
Name

Number    Street

City      State      ZIP Code

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.17**
Name

Number    Street

City      State      ZIP Code

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.18**
Name

Number    Street

City      State      ZIP Code

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**3.19**
Name

Number    Street

City      State      ZIP Code

☐ Schedule D, line _____
☐ Schedule E/F, line _____
☐ Schedule G, line _____

**Fill in this information to identify your case:**

Debtor 1    Robert R.  McNamara
            First Name            Middle Name              Last Name

Debtor 2
(Spouse, if filing) First Name     Middle Name              Last Name

United States Bankruptcy Court for the:  Massachusetts

Case number   17-11329
(if known)

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition
    chapter 13 income as of the following date:
    _____
    MM / DD / YYYY

Official Form 106I

# Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Describe Employment

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| 1. | **Fill in your employment information.**<br><br>If you have more than one job, attach a separate page with information about additional employers.<br><br>Include part-time, seasonal, or self-employed work.<br><br>Occupation may include student or homemaker, if it applies. | | |
| | Employment status | ☐ Employed<br>☒ Not employed | ☒ Employed<br>☐ Not employed |
| | Occupation | | X Ray technician |
| | Employer's name | | South Shore Health System |
| | Employer's address | | |
| | | Number   Street | Number   Street |
| | | City      State   ZIP Code | City       State   ZIP Code |
| | How long employed there? | | |

## Part 2:   Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 2. | **List monthly gross wages, salary, and commissions** (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. $ _____ | $ 3,944.33 |
| 3. | **Estimate and list monthly overtime pay.** | 3. + $ _____ | + $ 1,165.93 |
| 4. | **Calculate gross income.** Add line 2 + line 3. | 4. $ 0.00 | $ 5,110.26 |

Debtor 1    Robert R. McNamara
      First Name    Middle Name     Last Name

Case number (if known) 17-11329

|  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|
| **Copy line 4 here** .......................................... → 4. | $ 0.00 | $ 5,110.26 |

**5. List all payroll deductions:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $ | $ 1,518.47 |
| 5b. **Mandatory contributions for retirement plans** | 5b. | $ | $ 0.00 |
| 5c. **Voluntary contributions for retirement plans** | 5c. | $ | $ 0.00 |
| 5d. **Required repayments of retirement fund loans** | 5d. | $ | $ 0.00 |
| 5e. **Insurance** | 5e. | $ | $ 0.00 |
| 5f. **Domestic support obligations** | 5f. | $ | $ 0.00 |
| 5g. **Union dues** | 5g. | $ | $ 0.00 |
| 5h. **Other deductions.** Specify: _____ | 5h. | + $ | + $ 0.00 |

| | | | |
|---|---|---|---|
| 6. **Add the payroll deductions.** Add lines 5a + 5b + 5c + 5d + 5e +5f + 5g + 5h. | 6. | $ 0.00 | $ 1,518.47 |
| 7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ 0.00 | $ 3,591.79 |

**8. List all other income regularly received:**

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| 8a. **Net income from rental property and from operating a business, profession, or farm**<br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 0.00 | $ 0.00 |
| 8b. **Interest and dividends** | 8b. | $ 0.00 | $ 0.00 |
| 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive**<br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ 0.00 |
| 8d. **Unemployment compensation** | 8d. | $ 0.00 | $ 0.00 |
| 8e. **Social Security** | 8e. | $ 2,280.00 | $ 970.00 |
| 8f. **Other government assistance that you regularly receive**<br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies.<br>Specify: _____ | 8f. | $ 0.00 | $ 0.00 |
| 8g. **Pension or retirement income** | 8g. | $ 0.00 | $ 0.00 |
| 8h. **Other monthly income.** Specify: _____ | 8h. | + $ 0.00 | + $ 0.00 |

| | | | |
|---|---|---|---|
| 9. **Add all other income.** Add lines 8a + 8b + 8c + 8d + 8e + 8f +8g + 8h. | 9. | $ 2,280.00 | $ 970.00 |
| 10. **Calculate monthly income.** Add line 7 + line 9.<br>Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ 2,280.00 + $ 4,561.79 = | $ 6,841.79 |

**11. State all other regular contributions to the expenses that you list in *Schedule J.***

Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*

Specify: _____   11. + $ 0.00

**12. Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Your Assets and Liabilities and Certain Statistical Information,* if it applies   12.   $ 6,841.79
                                              **Combined monthly income**

**13. Do you expect an increase or decrease within the year after you file this form?**

☐ No.

☐ Yes. Explain:

**Fill in this information to identify your case:**

Debtor 1    Robert R.  McNamara
          First Name          Middle Name          Last Name

Debtor 2
(Spouse, if filing)  First Name    Middle Name    Last Name

United States Bankruptcy Court for the:  Massachusetts

Case number  17-11329
(if known)

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13
   expenses as of the following date:
   _____
   MM / DD / YYYY

Official Form 106J

# Schedule J: Your Expenses

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Your Household

1. Is this a joint case?

   ☒ No.  Go to line 2.
   ☐ Yes. Does Debtor 2 live in a separate household?

       ☒ No
       ☐ Yes. Debtor 2 must file Official Forms 106J-2, *Expenses for Separate Household of Debtor 2.*

2. Do you have dependents?         ☒ No

   Do not list Debtor 1 and        ☐ Yes. Fill out this information for
   Debtor 2.                              each dependent.................

   Do not state the dependents'
   names.

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |
| _____ | _____ | ☐ No ☐ Yes |

3. Do your expenses include
   expenses of people other than    ☒ No
   yourself and your dependents?    ☐ Yes

## Part 2:    Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form B 106I.)

|  | | Your expenses |
|---|---|---|
| 4. The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot. | 4. | $ 2,300.00 |
| If not included in line 4: | | |
| 4a. Real estate taxes | 4a. | $ 0.00 |
| 4b. Property, homeowner's, or renter's insurance | 4b. | $ 0.00 |
| 4c. Home maintenance, repair, and upkeep expenses | 4c. | $ 0.00 |
| 4d. Homeowner's association or condominium dues | 4d. | $ 0.00 |

| | | |
|---|---|---|
| Debtor 1 | Robert R.  McNamara | Case number (if known) 17-11329 |
| | First Name    Middle Name    Last Name | |

|  | | **Your expenses** |
|---|---|---|

5. **Additional mortgage payments for your residence,** such as home equity loans    5.   $ 0.00

6. **Utilities:**

  6a.  Electricity, heat, natural gas    6a.  $ 800.00

  6b.  Water, sewer, garbage collection    6b.  $ 0.00

  6c.  Telephone, cell phone, Internet, satellite, and cable services    6c.  $ 0.00

  6d.  Other. Specify: _____    6d.  $ 0.00

7. **Food and housekeeping supplies**    7.  $ 400.00

8. **Childcare and children's education costs**    8.  $ 0.00

9. **Clothing, laundry, and dry cleaning**    9.  $ 0.00

10. **Personal care products and services**    10.  $ 100.00

11. **Medical and dental expenses**    11.  $ 100.00

12. **Transportation.** Include gas, maintenance, bus or train fare.
Do not include car payments.    12.  $ 100.00

13. **Entertainment, clubs, recreation, newspapers, magazines, and books**    13.  $ 75.00

14. **Charitable contributions and religious donations**    14.  $ 50.00

15. **Insurance.**
Do not include insurance deducted from your pay or included in lines 4 or 20.

  15a.  Life insurance    15a.  $ 0.00

  15b.  Health insurance    15b.  $ 375.10

  15c.  Vehicle insurance    15c.  $ 200.00

  15d.  Other insurance. Specify:_____    15d.  $ 0.00

16. **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20.
Specify:  IRS _____    16.  $ 400.00

17. **Installment or lease payments:**

  17a.  Car payments for Vehicle 1    17a.  $ 472.47

  17b.  Car payments for Vehicle 2    17b.  $ 0.00

  17c.  Other. Specify:  Spouse credit card    17c.  $ 1,200.00

  17d.  Other. Specify:  Spouse IRS payment    17d.  $ 300.00

18. **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form 106I).**    18.  $ 0.00

19. **Other payments you make to support others who do not live with you.**
Specify:_____    19.  $ 0.00

20. **Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.**

  20a.  Mortgages on other property    20a.  $ 0.00

  20b.  Real estate taxes    20b.  $ 0.00

  20c.  Property, homeowner's, or renter's insurance    20c.  $ 0.00

  20d.  Maintenance, repair, and upkeep expenses    20d.  $ 0.00

  20e.  Homeowner's association or condominium dues    20e.  $ 0.00

Debtor 1     Robert R.  McNamara
             First Name     Middle Name        Last Name                          Case number *(if known)* 17-11329

---

21.  **Other**. Specify: _____                    21.  +$ 0.00

22.  **Calculate your monthly expenses.**
     22a. Add lines 4 through 21.                                                   $ 6,872.57
     22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2    $
     22c. Add line 22a and 22b. The result is your monthly expenses.         22.   $ 6,872.57

23.  **Calculate your monthly net income.**

     23a. Copy line 12 (*your combined monthly income*) from *Schedule I*.   23a.   $ 6,841.79

     23b. Copy your monthly expenses from line 22 above.                     23b.  – $ 6,872.57

     23c. Subtract your monthly expenses from your monthly income.
          The result is your *monthly net income*.                           23c.   $ -30.78

24.  **Do you expect an increase or decrease in your expenses within the year after you file this form?**

     For example, do you expect to finish paying for your car loan within the year or do you expect your
     mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

     ☐ No.
     ☐ Yes.     Explain here:

**Fill in this information to identify your case:**

| | | | |
|---|---|---|---|
| Debtor 1 | Robert | R. | McNamara |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the: Massachusetts

Case number: 17-11329
(if known)

☐ Check if this is an
amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information   12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.

### Part 1:   Summarize Your Assets

**Your assets**
Value of what you own

1. *Schedule A/B: Property* (Official Form 106A/B)
   1a. Copy line 55, Total real estate, from *Schedule A/B* .................................................... $ _____

   1b. Copy line 62, Total personal property, from *Schedule A/B* ........................................... $ 18,019.54

   1c. Copy line 63, Total of all property on *Schedule A/B* .................................................... $ 18,019.54

### Part 2:   Summarize Your Liabilities

**Your liabilities**
Amount you owe

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
   2a. Copy the total you listed in Column A, *Amount of claim*, at the bottom of the last page of Part 1 of *Schedule D* ........... $ 9,548.59

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
   3a. Copy the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F* ................................... $ 36,736.65

   3b. Copy the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F* ................................ + $ 1,516,066.43

   **Your total liabilities**   $ 1,562,351.67

### Part 3:   Summarize Your Income and Expenses

4. *Schedule I: Your Income* (Official Form 106I)
   Copy your combined monthly income from line 12 of *Schedule I* ............................................. $ 6,841.79

5. *Schedule J: Your Expenses* (Official Form 106J)
   Copy your monthly expenses from line 22, Column A, of *Schedule J* ........................................ $ 6,872.57

| Debtor 1 | Robert | R. | McNamara | Case number (if known) 17-11329 |
| | First Name | Middle Name | Last Name | |

---

**Part 4:**   **Answer These Questions for Administrative and Statistical Records**

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ☒ Yes

---

7. **What kind of debt do you have?**

   ☐ Your debts are primarily consumer debts. *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-10 for statistical purposes. 28 U.S.C. § 159.

   ☒ Your debts are not primarily consumer debts. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

---

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR,** Form 122B Line 11; **OR,** Form 122C-1 Line 14.

   $_____

---

9. Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:

|  | Total claim |
|---|---|
| **From Part 4 on *Schedule E/F*, copy the following:** | |
| 9a. Domestic support obligations (Copy line 6a.) | $_____ |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $_____ |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $_____ |
| 9d. Student loans. (Copy line 6f.) | $_____ |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $_____ |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | + $_____ |
| 9g. **Total.** Add lines 9a through 9f. | $_____ |

**Fill in this information to identify your case:**

Debtor 1     Robert R.  McNamara
             First Name        Middle Name        Last Name

Debtor 2
(Spouse, if filing)  First Name        Middle Name        Last Name

United States Bankruptcy Court for the: _____ Massachusetts

Case number    17-11329
(If known)

☐ Check if this is an
   amended filing

Official Form 106Dec

# Declaration About an Individual Debtor's Schedules

12/15

If two married people are filing together, both are equally responsible for supplying correct information.

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| | **Sign Below** |
|---|---|

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

☒ No

☐ Yes.  Name of person_____. Attach *Bankruptcy Petition Preparer's Notice, Declaration, and*
                                                                     *Signature* (Official Form 119).

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

✗ /s/Robert R.  McNamara                    ✗ _____
Signature of Debtor 1                          Signature of Debtor 2

Date 04/28/2017                              Date _____
     MM / DD / YYYY                               MM / DD / YYYY

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Robert___R.___McNamara |
| | First Name   Middle Name   Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name   Middle Name   Last Name |
| United States Bankruptcy Court for the: | Massachusetts |
| Case number (If known) | 17-11329 |

☐ Check if this is an amended filing

## Official Form 107

# Statement of Financial Affairs for Individuals Filing for Bankruptcy    04/16

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:    Give Details About Your Marital Status and Where You Lived Before

**1. What is your current marital status?**

☒ Married
☐ Not married

**2. During the last 3 years, have you lived anywhere other than where you live now?**

☐ No
☒ Yes. List all of the places you lived in the last 3 years.  Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 |
| 31 Central Street | From 01/01/83 | | From _____ |
| Number   Street | To 06/30/16 | Number   Street | To _____ |
| Norwell   MA   02061 | | | |
| City   State   ZIP Code | | City   State   ZIP Code | |
| | | ☐ Same as Debtor 1 | ☐ Same as Debtor 1 |
| Number   Street | From _____ | Number   Street | From _____ |
| | To _____ | | To _____ |
| City   State   ZIP Code | | City   State   ZIP Code | |

**3. Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.)

☒ No
☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

Debtor 1 ___Robert R.  McNamara___   Case number (if known) _17-11329_
First Name    Middle Name    Last Name

## Part 2:  Explain the Sources of Your Income

4. **Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
☒ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | $0.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | $ |
| **For last calendar year:**<br>(January 1 to December 31, _2016_ )<br>YYYY | ☒ Wages, commissions, bonuses, tips<br>☒ Operating a business | $21,538.49 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | $ |
| **For the calendar year before that:**<br>(January 1 to December 31, _2015_ )<br>YYYY | ☒ Wages, commissions, bonuses, tips<br>☒ Operating a business | $50,382.00 | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | $ |

5. **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
☒ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) | **Sources of income**<br>Describe below. | **Gross income from each source**<br>(before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | Social Security | $9,120.00 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| **For last calendar year:**<br>(January 1 to December 31, _2016_ )<br>YYYY | Social Security | $23,269.20 | | $ |
| | | $ | | $ |
| | | $ | | $ |
| **For the calendar year before that:**<br>(January 1 to December 31, _2015_ )<br>YYYY | Interest Income | $16.00 | | $ |
| | Social Security | $28,810.00 | | $ |
| | | $ | | $ |

Official Form 107                Statement of Financial Affairs for Individuals Filing for Bankruptcy                page **2**

| Debtor 1 | Robert R.  McNamara | | Case number *(if known)* 17-11329 |
|---|---|---|---|
| | First Name    Middle Name    Last Name | | |

---

**Part 3:** | **List Certain Payments You Made Before You Filed for Bankruptcy**

6. **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☒ No. **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $6,425* or more?

☒ No. Go to line 7.

☐ Yes. List below each creditor to whom you paid a total of $6,425* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

\* Subject to adjustment on 4/01/19 and every 3 years after that for cases filed on or after the date of adjustment.

☐ Yes. **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

☐ No. Go to line 7.

☐ Yes. List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| | Dates of payment | Total amount paid | Amount you still owe | Was this payment for... |
|---|---|---|---|---|
| Creditor's Name _____ | _____ | $_____ | $_____ | ☐ Mortgage ☐ Car ☐ Credit card |
| Number    Street _____ | _____ | | | ☐ Loan repayment |
| _____ | | | | ☐ Suppliers or vendors |
| City    State    ZIP Code | | | | ☐ Other _____ |
| Creditor's Name _____ | _____ | $_____ | $_____ | ☐ Mortgage ☐ Car ☐ Credit card |
| Number    Street _____ | _____ | | | ☐ Loan repayment |
| _____ | | | | ☐ Suppliers or vendors |
| City    State    ZIP Code | | | | ☐ Other _____ |
| Creditor's Name _____ | _____ | $_____ | $_____ | ☐ Mortgage ☐ Car ☐ Credit card |
| Number    Street _____ | _____ | | | ☐ Loan repayment |
| _____ | | | | ☐ Suppliers or vendors |
| City    State    ZIP Code | | | | ☐ Other _____ |

Debtor 1    <u>Robert R.</u>    <u>McNamara</u>      Case number *(if known)* <u>17-11329</u>
    First Name    Middle Name      Last Name

---

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
   *Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

   ☒ No
   ☐ Yes. List all payments to an insider.

| | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|
| Insider's Name _____ | _____ | $_____ | $_____ | |
| Number   Street _____ | _____ | | | |
| _____ | | | | |
| City    State   ZIP Code | | | | |
| Insider's Name _____ | _____ | $_____ | $_____ | |
| Number   Street _____ | _____ | | | |
| _____ | | | | |
| City    State   ZIP Code | | | | |

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
   Include payments on debts guaranteed or cosigned by an insider.

   ☒ No
   ☐ Yes. List all payments that benefited an insider.

| | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment Include creditor's name |
|---|---|---|---|---|
| Insider's Name _____ | _____ | $_____ | $_____ | |
| Number   Street _____ | _____ | | | |
| _____ | | | | |
| City    State   ZIP Code | | | | |
| Insider's Name _____ | _____ | $_____ | $_____ | |
| Number   Street _____ | _____ | | | |
| _____ | | | | |
| City    State   ZIP Code | | | | |

---

Debtor 1    Robert R.  McNamara    Case number *(if known)* 17-11329
First Name    Middle Name    Last Name

---

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
   List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

   ☐ No
   ☒ Yes. Fill in the details.

| | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| Case title Bank of Canton v Robert R. McNamara and Alice McNamara<br><br>Case number 1682 CV 1049 | Deficiency claim and counterclaim | Norfolk Superior Court<br>Court Name<br><br>Number    Street<br><br>City        State    ZIP Code | ☒ Pending<br>☐ On appeal<br>☐ Concluded |
| Case title_____<br><br>_____<br><br>Case number_____ | | Court Name<br><br>Number    Street<br><br>City        State    ZIP Code | ☐ Pending<br>☐ On appeal<br>☐ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?**
    Check all that apply and fill in the details below.

    ☒ No.  Go to line 11.
    ☐ Yes. Fill in the information below.

| | Describe the property | Date | Value of the property |
|---|---|---|---|
| Creditor's Name<br><br>Number    Street<br><br>City        State    ZIP Code | | _____ | $_____ |
| **Explain what happened**<br>☐ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br>☐ Property was attached, seized, or levied. | | | |

| | Describe the property | Date | Value of the property |
|---|---|---|---|
| Creditor's Name<br><br>Number    Street<br><br>City        State    ZIP Code | | _____ | $_____ |
| **Explain what happened**<br>☐ Property was repossessed.<br>☐ Property was foreclosed.<br>☐ Property was garnished.<br>☐ Property was attached, seized, or levied. | | | |

| Debtor 1 | Robert R. McNamara | | | Case number (if known) 17-11329 |
|---|---|---|---|---|
| | First Name | Middle Name | Last Name | |

**11. Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

☒ No

☐ Yes. Fill in the details.

| | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|
| Creditor's Name | | | |
| | | | $ |
| Number   Street | | | |
| | | | |
| City          State   ZIP Code | Last 4 digits of account number: XXXX–___ ___ ___ ___ | | |

**12. Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

☒ No

☐ Yes

---

### Part 5:   List Certain Gifts and Contributions

**13. Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

☒ No

☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| | | | $ |
| Person to Whom You Gave the Gift | | | |
| | | | $ |
| Number  Street | | | |
| | | | |
| City          State   ZIP Code | | | |
| Person's relationship to you        _____ | | | |

| Gifts with a total value of more than $600 per person | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| | | | $ |
| Person to Whom You Gave the Gift | | | |
| | | | $ |
| Number  Street | | | |
| | | | |
| City          State   ZIP Code | | | |
| Person's relationship to you        _____ | | | |

Debtor 1    Robert R. McNamara                Case number *(if known)* 17-11329

       First Name    Middle Name      Last Name

---

**14. Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

☒ No

☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that total more than $600 | Describe what you contributed | Date you contributed | Value |
|---|---|---|---|
| _____<br>Charity's Name<br><br>_____<br>Number Street<br><br>_____<br><br>_____<br>City State ZIP Code | | _____ | $_____ |
| | | _____ | $_____ |

---

## Part 6:   List Certain Losses

**15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

☒ No

☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|
| | | _____ | $_____ |

---

## Part 7:   List Certain Payments or Transfers

**16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**

Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No

☒ Yes. Fill in the details.

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Law Office of Joseph G Butler<br>Person Who Was Paid<br><br>355 Providence Highway<br>Number Street<br><br>_____<br><br>Westwood    MA    02090<br>City     State    ZIP Code<br><br>_____<br>Email or website address<br>Brendan McNamara<br>Person Who Made the Payment, if Not You | | 04/13/17 | $2,800.00 |
| | | _____ | $_____ |

Debtor 1     Robert R.  McNamara                     Case number *(if known)* 17-11329
First Name    Middle Name     Last Name

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| $0$ Bk Class Inc. <br> Person Who Was Paid <br><br> Number   Street <br><br><br> City        State      ZIP Code <br><br> Email or website address <br> Brendan McNamara <br> Person Who Made the Payment, if Not You | | 04/13/17 | $_____ <br><br> $_____ |

**17. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**

Do not include any payment or transfer that you listed on line 16.

☒ No
☐ Yes. Fill in the details.

| | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| Person Who Was Paid <br><br> Number   Street <br><br><br> City        State      ZIP Code | | _____ <br><br> _____ | $_____ <br><br> $_____ |

**18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**

Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property).
Do not include gifts and transfers that you have already listed on this statement.

☒ No
☐ Yes. Fill in the details.

| | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|
| Person Who Received Transfer <br><br> Number   Street <br><br><br> City        State      ZIP Code <br><br> Person's relationship to you _____ | | | _____ |
| Person Who Received Transfer <br><br> Number   Street <br><br><br> City        State      ZIP Code <br><br> Person's relationship to you _____ | | | _____ |

Debtor 1    Robert R.  McNamara
            First Name    Middle Name        Last Name

Case number *(if known)* 17-11329

**19.** Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary? (These are often called *asset-protection devices*.)

☒ No
☐ Yes. Fill in the details.

| | Description and value of the property transferred | Date transfer was made |
|---|---|---|
| Name of trust _____ | | _____ |
| _____ | | |

## Part 8:   List Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

**20.** Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

☒ No
☐ Yes. Fill in the details.

| | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|
| Name of Financial Institution _____ <br> Number   Street _____ <br> _____ <br> City        State   ZIP Code | XXXX–__ __ __ __ | ☐ Checking <br> ☐ Savings <br> ☐ Money market <br> ☐ Brokerage <br> ☐ Other_____ | _____ | $_____ |
| Name of Financial Institution _____ <br> Number   Street _____ <br> _____ <br> City        State   ZIP Code | XXXX–__ __ __ __ | ☐ Checking <br> ☐ Savings <br> ☐ Money market <br> ☐ Brokerage <br> ☐ Other_____ | _____ | $_____ |

**21.** Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?

☒ No
☐ Yes. Fill in the details.

| | Who else had access to it? | Describe the contents | Do you still have it? |
|---|---|---|---|
| Name of Financial Institution _____ <br> Number   Street _____ <br> _____ <br> City        State   ZIP Code | Name _____ <br> Number   Street _____ <br> _____ <br> City    State    ZIP Code | | ☐ No <br> ☐ Yes |

Debtor 1    Robert R.  McNamara

<u>First Name       Middle Name          Last Name</u>

Case number *(if known)* <u>17-11329</u>

---

**22.** Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?

☑ **No**

☐ **Yes. Fill in the details.**

| | Who else has or had access to it? | Describe the contents | Do you still have it? |
|---|---|---|---|
| Name of Storage Facility | Name | | ☐ No ☐ Yes |
| Number    Street | Number    Street | | |
| City            State    ZIP Code | City State    ZIP Code | | |

---

**Part 9:**    **Identify Property You Hold or Control for Someone Else**

**23.** Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.

☑ **No**

☐ **Yes. Fill in the details.**

| | Where is the property? | Describe the property | Value |
|---|---|---|---|
| Owner's Name | | | $_____ |
| Number    Street | Number    Street | | |
| City            State    ZIP Code | City            State    ZIP Code | | |

---

**Part 10:**    **Give Details About Environmental Information**

For the purpose of Part 10, the following definitions apply:

- *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.

- *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.

- *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

**24.** Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?

☑ **No**

☐ **Yes. Fill in the details.**

| | Governmental unit | Environmental law, if you know it | Date of notice |
|---|---|---|---|
| Name of site | Governmental unit | | _____ |
| Number    Street | Number    Street | | |
| City            State    ZIP Code | City            State    ZIP Code | | |

---

Debtor 1    Robert R.  McNamara _____    Case number (if known) 17-11329 _____
            First Name    Middle Name    Last Name

25. Have you notified any governmental unit of any release of hazardous material?

☑ No
☐ Yes. Fill in the details.

| | Governmental unit | Environmental law, if you know it | Date of notice |
|---|---|---|---|
| _____ Name of site | _____ Governmental unit | | _____ |
| _____ Number    Street | _____ Number    Street | | |
| _____ City    State    ZIP Code | _____ City    State    ZIP Code | | |

26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.

☑ No
☐ Yes. Fill in the details.

| | Court or agency | Nature of the case | Status of the case |
|---|---|---|---|
| Case title_____ | _____ Court Name | | ☐ Pending |
| _____ | _____ Number    Street | | ☐ On appeal |
| Case number_____ | _____ City    State    ZIP Code | | ☐ Concluded |

<table>
<tr><td><strong>Part 11:</strong></td><td colspan="3"><strong>Give Details About Your Business or Connections to Any Business</strong></td></tr>
</table>

27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time
☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)
☐ A partner in a partnership
☐ An officer, director, or managing executive of a corporation
☑ An owner of at least 5% of the voting or equity securities of a corporation

☐ No. None of the above applies. Go to Part 12.
☑ Yes. Check all that apply above and fill in the details below for each business.

| | Describe the nature of the business | Employer identification number |
|---|---|---|
| Sparrell Funeral Service, Inc. Business Name | Funeral Home | Do not include Social Security number or ITIN. EIN: 0 4 – 2 7 9 8 9 9 9 |
| 31 Central Street Number    Street | Name of accountant or bookkeeper | Dates business existed |
| Norwell    MA    02061 City    State    ZIP Code | | From  See 1  To  N/A |

| | Describe the nature of the business | Employer identification number |
|---|---|---|
| _____ Business Name | | Do not include Social Security number or ITIN. EIN: __ __ – __ __ __ __ __ __ __ |
| _____ Number    Street | Name of accountant or bookkeeper | Dates business existed |
| _____ City    State    ZIP Code | | From _____ To _____ |

Official Form 107        Statement of Financial Affairs for Individuals Filing for Bankruptcy        page 11

Debtor 1    Robert R. McNamara                          Case number *(if known)* 17-11329

         First Name    Middle Name       Last Name

| | Describe the nature of the business | Employer Identification number |
|---|---|---|
| Business Name | | Do not include Social Security number or ITIN. |
| | | EIN: __ __ - __ __ __ __ __ __ __ |
| Number    Street | Name of accountant or bookkeeper | Dates business existed |
| | | |
| City        State    ZIP Code | | From _____ To _____ |

---

28. **Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☒ No
☐ Yes. Fill in the details below.

                             Date issued

Name

Number    Street

City        State    ZIP Code       MM / DD / YYYY

---

## Part 12:   Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

✗ /s/Robert R. McNamara               ✗

Signature of Debtor 1                          Signature of Debtor 2

Date 28 April 2017                      Date _____

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

☒ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

☒ No
☐ Yes. Name of person_____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

---

Attachment
Debtor: Robert R.  McNamara        Case No: 17-11329

Attachment 1
7/27/1983

| Fill in this information to identify your case: | | |
|---|---|---|
| Debtor 1 | Robert R.  McNamara | |
| | First Name  Middle Name  Last Name | |
| Debtor 2 | | |
| (Spouse, if filing) First Name  Middle Name  Last Name | | |
| United States Bankruptcy Court for the: | Massachusetts | |
| Case number 17-11329 | | |
| (if known) | | |

☐ Check if this is an amended filing

## Official Form 108

# Statement of Intention for Individuals Filing Under Chapter 7    12/15

If you are an individual filing under chapter 7, you must fill out this form if:
- creditors have claims secured by your property, or
- you have leased personal property and the lease has not expired.

You must file this form with the court within 30 days after you file your bankruptcy petition or by the date set for the meeting of creditors, whichever is earlier, unless the court extends the time for cause. You must also send copies to the creditors and lessors you list on the form.

If two married people are filing together in a joint case, both are equally responsible for supplying correct information.
Both debtors must sign and date the form.

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known).

## Part 1:    List Your Creditors Who Hold Secured Claims

1. For any creditors that you listed in Part 1 of *Schedule D: Creditors Who Hold Claims Secured by Property* (Official Form 106D), fill in the information below.

| Identify the creditor and the property that is collateral | What do you intend to do with the property that secures a debt? | Did you claim the property as exempt on Schedule C? |
|---|---|---|
| Creditor's name:  KeyCorp<br><br>Description of property<br>securing debt:  2014 Jeep Cherokee with 38000 miles. | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☒ Retain the property and [explain]: Continue monthly payments | ☐ No<br>☒ Yes |
| Creditor's name:  _____<br><br>Description of property<br>securing debt:  _____ | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: _____ | ☐ No<br>☐ Yes |
| Creditor's name:  _____<br><br>Description of property<br>securing debt:  _____ | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: _____ | ☐ No<br>☐ Yes |
| Creditor's name:  _____<br><br>Description of property<br>securing debt:  _____ | ☐ Surrender the property.<br>☐ Retain the property and redeem it.<br>☐ Retain the property and enter into a *Reaffirmation Agreement*.<br>☐ Retain the property and [explain]: _____ | ☐ No<br>☐ Yes |

Your name   Robert R.  McNamara
            First Name   Middle Name        Last Name

Case number *(if known)* 17-11329

---

**Part 2:    List Your Unexpired Personal Property Leases**

For any unexpired personal property lease that you listed in *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 106G),
fill in the information below. Do not list real estate leases. *Unexpired leases* are leases that are still in effect; the lease period has not yet
ended. You may assume an unexpired personal property lease if the trustee does not assume it. 11 U.S.C. § 365(p)(2).

| Describe your unexpired personal property leases | Will the lease be assumed? |
|---|---|

Lessor's name:   Scituate Harbormaster

☒ No
☐ Yes

Description of leased
property:   Marina mooring

---

Lessor's name:

☐ No
☐ Yes

Description of leased
property:

---

Lessor's name:

☐ No
☐ Yes

Description of leased
property:

---

Lessor's name:

☐ No
☐ Yes

Description of leased
property:

---

Lessor's name:

☐ No
☐ Yes

Description of leased
property:

---

Lessor's name:

☐ No
☐ Yes

Description of leased
property:

---

Lessor's name:

☐ No
☐ Yes

Description of leased
property:

---

**Part 3:    Sign Below**

Under penalty of perjury, I declare that I have indicated my intention about any property of my estate that secures a debt and any
personal property that is subject to an unexpired lease.

✗ /s/Robert R.  McNamara
Signature of Debtor 1

✗
Signature of Debtor 2

Date 04/28/2017
     MM /  DD /  YYYY

Date
     MM /  DD /  YYYY

**Fill in this information to identify your case:**

Debtor 1    Robert R.  McNamara
First Name    Middle Name    Last Name

Debtor 2
(Spouse, if filing)    First Name    Middle Name    Last Name

United States Bankruptcy Court for the:    **MASSACHUSETTS**

Case number    **17-11329**
(if known)

**Check one box only as directed in this form and in Form 122A-1Supp:**

☒ 1. There is no presumption of abuse.

☐ 2. The calculation to determine if a presumption of abuse applies will be made under *Chapter 7 Means Test Calculation* (Official Form 122A–2).

☐ 3. The Means Test does not apply now because of qualified military service but it could apply later.

☐ Check if this is an amended filing

Official Form 122A—1

# Chapter 7 Statement of Your Current Monthly Income

12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known). If you believe that you are exempted from a presumption of abuse because you do not have primarily consumer debts or because of qualifying military service, complete and file *Statement of Exemption from Presumption of Abuse Under § 707(b)(2)* (Official Form 122A-1Supp) with this form.

## Part 1:   Calculate Your Current Monthly Income

**1. What is your marital and filing status?** Check one only.

☐ **Not married.** Fill out Column A, lines 2-11.

☐ **Married and your spouse is filing with you.** Fill out both Columns A and B, lines 2-11.

☐ **Married and your spouse is NOT filing with you.** You and your spouse are:

   ☐ **Living in the same household and are not legally separated.** Fill out both Columns A and B, lines 2-11.

   ☐ **Living separately or are legally separated.** Fill out Column A, lines 2-11; do not fill out Column B. By checking this box, you declare under penalty of perjury that you and your spouse are legally separated under nonbankruptcy law that applies or that you and your spouse are living apart for reasons that do not include evading the Means Test requirements. 11 U.S.C. § 707(b)(7)(B).

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

| | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|
| **2. Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $_____ | $_____ |
| **3. Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $_____ | $_____ |
| **4. All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Include regular contributions from a spouse only if Column B is not filled in. Do not include payments you listed on line 3. | $_____ | $_____ |

**5. Net income from operating a business, profession, or farm**

| | Debtor 1 | Debtor 2 | | | |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $_____ | $_____ | | | |
| Ordinary and necessary operating expenses | – $_____ | – $_____ | | | |
| Net monthly income from a business, profession, or farm | $_____ | $_____ | Copy here → | $_____ | $_____ |

**6. Net income from rental and other real property**

| | Debtor 1 | Debtor 2 | | | |
|---|---|---|---|---|---|
| Gross receipts (before all deductions) | $_____ | $_____ | | | |
| Ordinary and necessary operating expenses | – $_____ | – $_____ | | | |
| Net monthly income from rental or other real property | $_____ | $_____ | Copy here → | $_____ | $_____ |

| **7. Interest, dividends, and royalties** | $_____ | $_____ |
|---|---|---|

Debtor 1    **Robert R. McNamara**                 Case number (if known) **17-11329**
    First Name     Middle Name     Last Name

| | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|

**8.** Unemployment compensation     $_____    $_____

Do not enter the amount if you contend that the amount received was a benefit
under the Social Security Act. Instead, list it here: .............................↴

   For you ............................................................... $_____

   For your spouse .................................................. $_____

**9.** **Pension or retirement income.** Do not include any amount received that was a    $_____    $_____
benefit under the Social Security Act.

**10.** **Income from all other sources not listed above.** Specify the source and amount.
Do not include any benefits received under the Social Security Act or payments received
as a victim of a war crime, a crime against humanity, or international or domestic
terrorism. If necessary, list other sources on a separate page and put the total below.

   _____       $_____    $_____

   _____       $_____    $_____

   Total amounts from separate pages, if any.    + $_____    + $_____

**11.** **Calculate your total current monthly income.** Add lines 2 through 10 for each
column. Then add the total for Column A to the total for Column B.

     $_____   +   $_____   =   $_____

                                             Total current
                                             monthly income

---

**Part 2:**   **Determine Whether the Means Test Applies to You**

**12.** Calculate your current monthly income for the year. Follow these steps:

   **12a.**   Copy your total current monthly income from line 11...................................... Copy line 11 here➡    $_____

         Multiply by 12 (the number of months in a year).      **x 12**

   **12b.**   The result is your annual income for this part of the form.      **12b.**    $_____

**13.** Calculate the median family income that applies to you. Follow these steps:

   Fill in the state in which you live.    [_____]

   Fill in the number of people in your household.    [_____]

   Fill in the median family income for your state and size of household. ........................**13.**    $_____

   To find a list of applicable median income amounts, go online using the link specified in the separate
instructions for this form. This list may also be available at the bankruptcy clerk's office.

**14.** How do the lines compare?

   **14a.** ☐   Line 12b is less than or equal to line 13. On the top of page 1, check box 1, *There is no presumption of abuse.*
          Go to Part 3.

   **14b.** ☐   Line 12b is more than line 13. On the top of page 1, check box 2, *The presumption of abuse is determined by Form 122A–2.*
          Go to Part 3 and fill out Form 122A–2.

---

**Part 3:**   **Sign Below**

By signing here, I declare under penalty of perjury that the information on this statement and in any attachments is true and correct.

   **✗** /s/Robert R. McNamara _____      **✗** _____
      Signature of Debtor 1                                 Signature of Debtor 2

   Date **04/28/2017** _____            Date _____
      MM / DD / YYYY                               MM / DD / YYYY

   If you checked line 14a, do NOT fill out or file Form 122A–2.

   If you checked line 14b, fill out Form 122A–2 and file it with this form.

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Robert R. McNamara** |
| | First Name        Middle Name        Last Name |
| Debtor 2 | |
| (Spouse, if filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | **MASSACHUSETTS** |
| Case number | **17-11329** |
| (If known) | |

❏ Check if this is an amended filing

## Official Form 122A—1Supp
# Statement of Exemption from Presumption of Abuse Under § 707(b)(2)   12/15

File this supplement together with *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A-1), if you believe that you are exempted from a presumption of abuse. Be as complete and accurate as possible. If two married people are filing together, and any of the exclusions in this statement applies to only one of you, the other person should complete a separate Form 122A-1 if you believe that this is required by 11 U.S.C. § 707(b)(2)(C).

---

### Part 1:   Identify the Kind of Debts You Have

1. **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." Make sure that your answer is consistent with the answer you gave at line 16 of the *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101).

   ☒ No.   Go to Form 122A-1; on the top of page 1 of that form, check box 1, *There is no presumption of abuse,* and sign Part 3. Then submit this supplement with the signed Form 122A-1.

   ❏ Yes. Go to Part 2.

---

### Part 2:   Determine Whether Military Service Provisions Apply to You

2. **Are you a disabled veteran** (as defined in 38 U.S.C. § 3741(1))?

   ❏ No.   Go to line 3.

   ❏ Yes. Did you incur debts mostly while you were on active duty or while you were performing a homeland defense activity?
   10 U.S.C. § 101(d)(1); 32 U.S.C. § 901(1).

       ❏ No. Go to line 3.

       ❏ Yes. Go to Form 122A-1; on the top of page 1 of that form, check box 1, *There is no presumption of abuse,* and sign Part 3. Then submit this supplement with the signed Form 122A-1.

3. **Are you or have you been a Reservist or member of the National Guard?**

   ❏ No.   Complete Form 122A-1. Do not submit this supplement.

   ❏ Yes. Were you called to active duty or did you perform a homeland defense activity? 10 U.S.C. § 101(d)(1); 32 U.S.C. § 901(1).

       ❏ No. Complete Form 122A-1. Do not submit this supplement.

       ❏ Yes. Check any one of the following categories that applies:

         ❏ **I was called to active duty after September 11, 2001,** for at least 90 days and remain on active duty.

         ❏ **I was called to active duty after September 11, 2001,** for at least 90 days and was released from active duty on _____, which is fewer than 540 days before I file this bankruptcy case.

         ❏ **I am performing a homeland defense activity for at least 90 days.**

         ❏ **I performed a homeland defense activity for at least 90 days,** ending on _____, which is fewer than 540 days before I file this bankruptcy case.

   > If you checked one of the categories to the left, go to Form 122A-1. On the top of page 1 of Form 122A-1, check box 2, *The Means Test does not apply now,* and sign Part 3. Then submit this supplement with the signed Form 122A-1. You are not required to fill out the rest of Official Form 122A-1 during the exclusion period. The *exclusion period* means the time you are on active duty or are performing a homeland defense activity, and for 540 days afterward. 11 U.S.C. § 707(b)(2)(D)(ii).
   >
   > If your exclusion period ends before your case is closed, you may have to file an amended form later.

---

## OFFICIAL LOCAL FORM 7

### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS

In re                                                    Case No.  **17-11329**

    **Robert R.  McNamara**

                                            Chapter  **7**

                               Debtor

### DECLARATION RE: ELECTRONIC FILING

### PART I - DECLARATION

    I[We]_____**Robert R.  McNamara**_____and _____

_____, hereby declare(s) under penalty of perjury that all of the information contained in my _____**schedules, sofa**_____ (singly or jointly the "Document"), filed electronically, is true and correct.  I understand that this DECLARATION is to be filed with the Clerk of Court electronically concurrently with the electronic filing of the Document.   I understand that failure to file this DECLARATION may cause the Document to be struck and any request contained or relying thereon to be denied, without further notice.

    I further understand that, pursuant to the Massachusetts Electronic Filing Local Rule (MEFR) 7(b), all paper documents containing original signatures executed under the penalties of perjury and filed electronically with the Court are the property of the bankruptcy estate and shall be maintained by the authorized CM/ECF Registered User for a period of five (5) years after the closing of this case.

Dated: _4/23/2017_                  _____
                                            (Affiant)


                                     _____
                                            (Joint Affiant)

### PART II - DECLARATION OF ATTORNEY (IF AFFIANT IS REPRESENTED BY COUNSEL)

    I certify that the affiant(s) signed this form before I submitted the Document, I gave the affiant(s) a copy of the Document and this DECLARATION, and I have followed all other electronic filing requirements currently established by local rule and standing order. This DECLARATION is based on all information of which I have knowledge and my signature below constitutes my certification of the foregoing under Fed. R. Bankr. P. 9011. I have reviewed and will comply with the provisions of MEFR 7.

Dated: _4/28/2017_                  Signed: _____
                                       (Attorney for Affiant - /s/used by Registered ECF Users Only)

# EXHIBIT H

Bk 34646 P586 #116187
11-08-2016 a 11:12a

RECEIVED AND RECORDED
NORFOLK COUNTY
REGISTRY OF DEEDS
DEDHAM, MA

MASSACHUSETTS STATE EXCISE TAX
Norfolk Registry of Deeds
Date: 11-08-2016 a 11:12am
Ctl#: 567          Doc#: 116187
Fee: $456.00  Cons: $100,000.00

CERTIFY

*William P O'Donnell*
WILLIAM P. O'DONNELL, REGISTER

## QUITCLAIM DEED

Sparrell Funeral Service, Inc., a Massachusetts corporation of with a principal place of business at 30 Central Street, Norwell, Plymouth County, Massachusetts for consideration of One Hundred Thousand ($100,000.00) Dollars , pursuant to a Promissory Note, grant to BM Mack Properties, LLC, of Norwell, Plymouth County, Massachusetts, with **quitclaim covenants**,

A certain parcel of land with the buildings thereon situated on the easterly side of South Main Street and on the southerly side of Summer Street in Cohasset, Norfolk County, Massachusetts, as shown on "Plan of Land in Cohasset, Mass., dated August 1935 by Lewis W. Perkins, Eng'r", and bounded Northerly by said Summer Street, as shown on said plan, one hundred seventy three and 21/100 (173.21) feet; Westerly by South Main Street, as shown on said plan, by two courses, the first by a slightly curved line and measuring forty two and 47/100 (42.47) feet, and one hundred and 31/100 (100.31) feet, respectively; Southerly by land now or formerly of one Tilden, as shown on said plan, one hundred eighty and 22/100 (180.22) feet; and Easterly by land now or formerly of said Tilden, one hundred thirty four and 78/100 (134.78) feet.

Containing 27,055 square feet of land, according to said plan and be any or all of said measurements more or less, and however otherwise said premises may be bounded, measured, and described.

Said parcel does not constitute all or substantially all of the assets of Sparrell Funeral Service, Inc.

For title, see deed recorded with Norfolk County Registry of Deeds in Book 34503, Page 388 .

Address of subject premises:  1 Summer Street, Cohasset, MA

Witness my hand and seal this __7__ day of November, 2016.

Sparrell Funeral Service, Inc.

By: *Robert R McNamara*
    Robert R. McNamara
    Its President and Treasurer

*1 Summer Street, Cohasset, MA*

Exhibit 11
Date 7-7-17
D.A. Gill Brown
Gill Reporting, Inc.

# COMMONWEALTH OF MASSACHUSETTS

**PLYMOUTH, SS.**

On this ___7-th___ day of October, 2016, before me, the undersigned notary public, personally appeared Robert R. McNamara of Sparrell Funeral Service, Inc., a Massachusetts corporatoin, and proved to me through satisfactory evidence of identification, which was _____ photographic identification with signature issued by a federal or state governmental agency, _____ oath or affirmation of a credible witness who is personally known to me and who has stated to me that he/she is unaffected by the document or transaction and that he/she knows the person(s) whose name(s) is/are signed on the preceding/attached document, ✓ personal knowledge of the undersigned, to be the person(s) whose name is/are signed on the preceding/attached document and acknowledged to me that he signed it voluntarily for its stated purpose as the President and Treasurer of Sparrell Funeral Service, Inc.

Notary Public _Kathleen M. Luoto_

My commission expires: 12/9/22

KATHLEEN M. LUOTO
Notary Public
Commonwealth of Massachusetts
My Commission Expires Dec. 9, 2022

S:\KH Documents\McNamara, Robert\Deed to BM Mack Properties LLC (Cohasset) (10-16).docx

Page 2 of 2

# EXHIBIT I



Bk: 47717 Pg: 17 Page: 1 of 2
Recorded: 11/08/2016 01:39 PM
ATTEST: John R. Buckley, Jr. Register
Plymouth County Registry of Deeds

## QUITCLAIM DEED

Sparrell Funeral Service, Inc., a Massachusetts corporation of with a principal place of business at 30 Central Street, Norwell, Plymouth County, Massachusetts for consideration of One Hundred Thousand ($100,000.00) Dollars, pursuant to a Promissory Note, grants to BM Mack Properties, LLC of Norwell, Plymouth County, Massachusetts, with **quitclaim covenants,** 87 Forest Street

The premises, with the buildings thereon, situated in Norwell, Plymouth County, Massachusetts, containing 1.42 acres as shown on a plan entitled "Plan of Land on Central Street and Mill Lane, Norwell, scale 1" = 40' dated November 14, 1972, Loring H. Jacobs and Assoc., Inc. 687 Main Street, Norwell, Mass." Said parcel is more fully described as follows:

WESTERLY          by Central Street, by four courses, 173.74 feet, 66.17 feet, 46.21 feet and
                  29.52 feet respectively;
NORTHERLY         by Mill Lane, 131.10 feet;
EASTERLY          by land now or formerly of Dionne, by four courses, 88.77 feet, 66.93 feet,
                  96.19 feet, and 90.52 feet, respectively;
SOUTHERLY         by land now or formerly of Nickerson, 228.12 feet.

Said parcel does not constitute all of substantially all of the assets of Sparrell Funeral Service, Inc.

For title, see deed recorded with Plymouth County Registry of Deeds in Book 47514, Page 38.

Address of subject premises:  30 Central Street, Norwell, MA

Witness my hand and seal this _____ day of November, 2016.

Sparrell Funeral Services, Inc.

By: Robert R. McNamara

Robert R. McNamara
Its President and Treasurer

MASSACHUSETTS EXCISE TAX
Plymouth District ROD #11 001
Date:   11/08/2016 01:39 PM
Ctrl# 097275 27810  Doc# 00101296
Fee: $456.00 Cons: $100,000.00

mail

**Kraus & Hummel LLP**
99A Court Street
Plymouth, MA 02360

Page 1 of 2



Exhibit 4
Date 7-7-17

D.A. Gill Brown
Gill Reporting, Inc.

# COMMONWEALTH OF MASSACHUSETTS

**PLYMOUTH, SS.**

On this _7th_ day of October, 2016, before me, the undersigned notary public, personally appeared Robert R. McNamara of Sparrell Funeral Service, Inc., a Massachusetts corporation, and proved to me through satisfactory evidence of identification, which was _____ photographic identification with signature issued by a federal or state governmental agency, _____ oath or affirmation of a credible witness who is personally known to me and has stated to me that he/she is unaffected by the document or transaction and that he/she knows the person(s) whose name(s) is/are signed on the preceding/attached document, _X_ personal knowledge of the undersigned, to be the person(s) whose name is/are signed on the preceding/attached document and acknowledged to me that he signed it voluntarily for its stated purpose as the President and Treasurer of Sparrell Funeral Service, Inc.

Notary Public - Kathleen M. Luoto

My commission expires: 12/9/22

S:\KH Documents\McNamara, Robert\Deed to BM Mack Properties LLC (Norwell) (10-16).docx

KATHLEEN M. LUOTO
Notary Public
Commonwealth of Massachusetts
My Commission Expires Dec. 9, 2022

# EXHIBIT J

# PROMISSORY NOTE

$225,000.00                                    Dated: November 7th, 2016

     FOR VALUE RECEIVED, the undersigned **BM McNamara Funeral Services Inc. and BM Mack Properties LLC** of Norwell , Ma (hereinafter referred to as "Borrower") promises to pay to **Sparrell Funeral Services Inc.**, or order at 30 Central Street, Norwell, Massachusetts (hereinafter "Note Holder"), the principal sum of **Two Hundred and Twenty five Thousand** ($225,000.00) **Dollars** together with interest on any outstanding principal balance at the annual rate of three (3%) percent; payments shall be in monthly equal installments of $949.00 beginning on December 1, 2016 based upon a thirty (30) year amortization; full payment of any outstanding principal and interest is due in full on or before November 30, 2031 and prepayment of the principal amount of this Note may be made in part or whole, at any time during the course of this Note, without penalty. This Promissory Note is provided based on a certain Asset Purchase Agreement date and Purchase and Sale Agreement of even date herewith.

     The following events shall constitute an event of default on this note: failure to pay in full principal and interest when due, provided, however, that no penalty shall accrue in the event that payments provided for hereunder are paid within ten (10) days of becoming due; in the event that payment is more than ten (10) days late, a penalty of $30 shall accrue and be payable by Borrowers. Upon default, the full unpaid principal amount shall immediately become due at Note Holder's option without notice to the undersigned.

     The liability of the undersigned hereunder shall be absolute and unconditional. Each and

Exhibit 1
Date 7-10-17
D.A. Gill Brown
Gill Reporting, Inc.

Exhibit 16
Date 7-7-17
D.A. Gill Brown
Gill Reporting, Inc.

every party to this instrument, either as maker, endorser, guarantor, surety or otherwise, hereby waives presentment, demand for payment, notice of dishonor, protest, and any and all notices and demands in connection with the performance, default or enforcement of this note, and consents to any and all extensions or postponements of the time of payment or other indulgence, renewals, waivers, substitutions, exchanges, releases of collateral granted or permitted by the holder.

Borrower hereby agrees to pay to the Note Holder, or directly to such attorney, reasonable attorney fees and any and all expenses incurred by such attorney in connection with collecting payment hereof.

**SIGNED as a sealed instrument this _7th_ day of November, 2016.**

Witness

Witness

BM McNamara Funeral Services Inc.
By Its.

BM Mack Properties, LLC
General Manager

S:\KH Documents\McNamara, Brendan\Promissory Note (11-16).docx

# EXHIBIT J

# Letter of Intent to Gift Business

May 1, 2016

I, Robert R. McNamara, President and Owner of Sparrell Funeral Services, Inc., operating at 30 Central Street, Norwell, MA. 02061 and 1 Summer Street, Cohasset, MA. 02025, with licensing held and given by the Commonwealth of Massachusetts for both establishments, hereby express my desire and intent to gift Sparrell Funeral Services, Inc. to my son, Brendan M. McNamara, licensed funeral director and managing director of Sparrell Funeral Services, Inc. at a date to be determined.

This gift shall be inclusive of any business, property, assets, etc., and all aspects relating to. There will be no cash exchange or sale price; this business will be 100 % gifted.

Final agreement arranged between myself and Brendan M. McNamara at a date no later than September 12, 2016, but may occur at any time before that.

Signed:

_____     5/1/16
Robert R. McNamara                                    Date

_____     May 1, 2016
Brendan M. McNamara                                   Date

Witness: _____

Print Name: GREGORY M. BERNSTEIN