**UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re: <br><br> Robert R. McNamara, <br>     Debtor | Chapter 7 <br> Case No. 17-11329-MSH |
| THE BANK OF CANTON <br>     Plaintiff, <br> v. <br><br> ROBERT R. MCNAMARA, <br>     Defendant. | Adversary Proceeding <br> No: 18-1022 |

**MEMORANDUM IN SUPORT OF PLAINTIFF'S MOTION TO COMPEL SPARRELL FUNERAL SERVICES, INC. TO DESIGNATE A PREPARED REPRESENTATIVE PURSUANT TO RULE 30(b)(6) AND AWARD PLAINTIFF ITS REASONABLE EXPENSES AND ATTORNEYS' FEES AS SANCTIONS**

Plaintiff, The Bank of Canton (the "Plaintiff") moves for an Order compelling Sparrell Funeral Services, Inc. ("Sparrell") to designate a corporate representative or other witness who is prepared to testify on Sparrell's behalf at deposition in accordance with Rule 7030(b)(6) of the Federal Rules of Bankruptcy Procedure and Rule 30(b)(6) of the Federal Rules of Civil Procedure. Plaintiff's deposition of Sparrell was suspended because Robert R. McNamara (the "Defendant") appeared as Sparrell's representative but was neither prepared for nor responsive to the topics that the Plaintiff identified in its deposition subpoena. Plaintiff is also seeking reimbursement of its expenses and legal fees to be paid by the Defendant and Sparrell as sanctions for this motion. This is the second discovery motion that has been necessitated by the

Defendant in this adversary proceeding.[1]   As grounds for the order to compel with sanctions, Plaintiff states the following:

## I. Background

### (i) Overview

This adversary proceeding requests denial of the Defendant's discharge under 11 U.S.C. § 727(a)(4) and (a)(2) upon allegations that the Defendant knowingly filed false and fraudulent bankruptcy schedules and statement of financial affairs and failed to satisfactorily explain the loss of assets in the underlying Chapter 7.  Plaintiff's allegations include Defendant's false claim that his interests in Sparrell had "$0.00" value and that Sparrell had no assets.[2]  Sparrell was a funeral home business that operated multiple locations with more than three decades of goodwill and success.  The Defendant had been a principle and co-owner of the business since its formation in 1998.  Less than six months before filing Chapter 7, the Defendant and his son, Brendan McNamara ("Brendan"), drained and siphoned Sparrell's assets to entities owned and controlled by Brendan.  Other than a shuffle in ownership, nearly everything about the business is the same; the business continues to operate in the same manner, at the same locations, doing business under the same name (*McNamara-Sparrell Funeral Homes*), sharing some of the same accounts and under the same two funeral directors (*the Defendant and*

---

[1] In December 2018, Plaintiff had to bring a motion to compel the Defendant to produce documents (Docket No. 31) that had been requested in July 2018.  The Plaintiff withdrew its prior motion and request for fees because the Defendant eventually complied with the production request (Docket No. 40.)  However, the Defendant's requiring of a motion before cooperating with his discovery obligations should not be the norm.  Sanctions are warranted.

[2] Defendant admitted at deposition that he never had Sparrell appraised.  *See* relevant portion of Defendant's testimony from transcript attached hereto as Exhibit A (p. 129, l. 6)

*Brendan*).[3]  It appears that the Defendant and Brendan may have falsified and/or created misleading records and accounts in an effort to give an appearance that Sparrell had no value. As the Plaintiff continues to narrow in on these issues, neither the Defendant nor any representative of his company (*Sparrell*), can or will explain the alleged loss of value.  Instead, the Defendant and Brendan have taken steps to hinder and delay the Plaintiff's efforts to depose Sparrell on matters involving its assets and financial affairs.  Initially, the Defendant and Brendan dodged service of Plaintiff's deposition subpoena,[4] then, even though the Defendant acknowledged that Brendan was the person with the most knowledge of the designated topics, he designated himself to be Sparrell's Rule 30(b)(6) witness.[5]  During the deposition, the Defendant often portrayed himself as being confused and having dementia.[6]

---

[3] Defendant purports that he is unemployed.  Although he admits that he is regularly at the funeral homes when there are funerals and wakes taking place and he obtained a new funeral director's license earlier this year.

[4] Eventually, Defendant's counsel agreed to accept service of Sparrell's subpoena.  However, prior attempts to serve the subpoena on the Defendant through constable were unsuccessful because one of the Defendant's sons provided misleading information to the constable claiming that the Defendant had moved to a new location which he refused to disclose.  *See* Affidavit of Non-Service attached hereto as Exhibit B.  Additionally, Brendan refused to accept service even though he was once employed by Sparrell, appeared on Sparrell's behalf at an earlier 2004 Examination, continues to maintain Sparrell's accounts and, according to the Defendant, alleged to be the person with the most knowledge of the designated topics.

[5] There were intimations from counsel that Brendan refused to appear on Sparrell's behalf in an attempt to create an argument that he did not "consent" as required by Rule 30(b)(6).  Regardless if this were the case, the Defendant admitted at deposition that he did not ask Brendan or anyone else to appear on behalf of Sparrell.  *See* relevant portions of Defendant's testimony at deposition attached hereto as Exhibit C (p.138, l. 9 – p. 139, l. 9.)

[6] It appears that, when beneficial and convenient for the Defendant, the Defendant presents himself as being confused and or unable to remember information that would be pertinent to this action.  One example of this was when the Defendant acted confused when Plaintiff's counsel was questioning him about writing and signing checks from Brendan's business accounts in which the Defendant was allegedly not authorized.  Defendant also claimed to have no knowledge that Sparrell owned real estate.  Yet, at deposition, Defendant admitted that he has not been diagnosed with dementia or memory loss problems. Exhibit D (p. 122, l. 2-4.)  And, according to Brendan, the Defendant is ill with "Type 2 diabetes and depression." *See* relevant portion of Brendan's testimony from his own deposition attached as Exhibit E (p. 14, l. 15.)  Neither of these diseases are commonly known to cause a patient to suffer the memory loss

**(ii)    Sparrell**

The Defendant has been Sparrell's sole principal officer and shareholder since 2011.[7] In September 2016, Sparrell purchased the two funeral home locations where it had been operating under lease since September 2011.   One funeral home was located at 1 Summer Street, Cohasset, MA (the "Cohasset Property") which Sparrell acquired for consideration of $660,000 and the other at 30 Central Street, Norwell, MA (the "Norwell Property") was acquired for $440,000, copies of said deeds are attached as Exhibits G and H.[8]  In November 2016, Sparrell transferred the Cohasset and Norwell Properties to an entity owned by Brendan, BM Mack Properties, LLC ("BM Mack"), under separate quitclaim deeds each for consideration of only $100,000, copies of said deeds are attached as Exhibits I and J.[9]   In addition to the real estate, all

---

and confusion in the manner that the Defendant often displays when being deposed by the Plaintiff.   It should also be noted that the Defendant was capable of driving himself to the deposition (*in a company owned vehicle because the Defendant doesn't own a car in his own name*).  Exhibit F (p. 12, l. 15 – p. 13, l. 11.)

[7] Sparrell was organized in 1983 by the Defendant and his now deceased brother, John B. McNamara ("John").  The two brothers were also co-owners of a related funeral home business under McNamara Associates, LLC ("McNamara Associates").  Since inception, the Defendant was the President of Sparrell and he and John were Directors.   McNamara Associates, LLC organized in 1999 and the Defendant and John were both its Managers and Members.  In or around August 2011, the brothers had a falling out.  John claimed that the Defendant was responsible for "mismanagement" of hundreds of thousands of dollars in prepaid funeral funds that were they were to be holding in trust for their clients' pre-needs benefits.  On or about August 31, 2011 Under a settlement agreement, the Defendant indemnified John for the missing pre-needs and the brothers divided up the businesses and parted ways.  Among other things, the Defendant surrendered all of his interests in McNamara Associates, LLC to John and in turn retained sole ownership in Sparrell.

[8] McNamara Associates held title to the Cohasset and Norwell Properties since 1999.  As part of the 2011 settlement between the Defendant and John, it was agreed that Sparrell could lease the Cohasset and Norwell Properties from McNamara Associates with an option to purchase.  Sparrell obtained a $1.39 Million loan through Live Oak Banking Company and exercised its option to purchase (the "Acquisition Loan").

[9] Just prior to these transfers, the Cohasset and Norwell Properties were appraised in excess of $1.81 Million.  Specifically, as of August 12, 2016, the Cohasset Property had a market value appraisal of $1 Million and the Norwell Property was appraised at $811,000. Consequently, Sparrell's equity in the Properties was in excess of $420,000 above the debt of the Acquisition Loan.

of Sparrell's business assets were transferred to a second entity owned by Brendan, BM McNamara Funeral Services, Inc. ("BM McNamara"), under an Asset Purchase Agreement dated November 7, 2016 for consideration of $25,000, a copy of said agreement is attached hereto as Exhibit K.[10] No cash was exchanged for the transfer of the real estate or business assets. Instead, BM Mack and BM McNamara executed a promissory note to Sparrell in the sum of $225,000 (the "Sparrell Note"), a copy is attached hereto as Exhibit L. Within five months of allegedly transferring Sparrell's assets,[11] the Defendant filed the underlying Chapter 7 declaring that his current value in the company was "$0.00." On its face, the Defendant's Chapter 7 filings fail to disclose the value of the Sparrell Note.[12]

### (iii) The Rule 30(b)(6) Deposition

Plaintiff commenced Sparrell's deposition on March 8, 2019. Prior to the deposition, Plaintiff served a Subpoena which advised Sparrell of its duty to designate one or more representatives or other persons to testify on Sparrell's behalf and specified the matters to which Plaintiff would be inquiring. A copy of the Subpoena is attached hereto as Exhibit O. Defendant appeared as the designated representative for the deposition and it was clear that he was not a

---

[10] Neither the Defendant nor Brendan obtained an appraisal of the business assets prior to the transfer. However, according to its own financial reports, Sparrell's assets exceeded $269,000 in March 2016 and, as of May 31, 2016, it claimed to have preneeds contracts valued in excess of $369,000.

[11] The truth concerning the transfer is uncertain. On or about November 30, 20**15**, the Defendant represented in open Court that Sparrell had already been transferred to Brendan. *See* Hearing transcript (p. 13 l. 4 – 18) attached hereto as Exhibit M. On May 1, 2016, The Defendant and Brendan signed a Letter of Intent to Gift Business representing that the Defendant was gifting 100% of Sparrell to Brendan for "… no cash exchange or sale price…" *See* Letter of Intent to Gift Business attached hereto as Exhibit N.

[12] The Sparrell Note has not been repaid in full.

sufficient witness.[13] The Defendant was either intentionally evasive or woefully unprepared to answer questions relevant to the subject matters set forth in the Subpoena and as result the Plaintiff had to suspend the deposition. Initial inquiries on various facts at issue exemplify the Defendant's inadequacies as Sparrell's Rule 30(b)(6) witness:

(i) Plaintiff's inquiries on basic questions concerning matters involving the Norwell and Cohasset Properties designated by the Subpoena (*see* Exhibit O, Designations F- G) were hampered by the Defendant's claim that he didn't "believe" Sparrell ever had ownership of the Properties, indicated that Sparrell never had ownership of the Properties, claimed he didn't remember anything concerning the purchase and sale agreement and/or knowing about the deeds in which title for the Properties were transferred to Sparrell. *See* Exhibit P (p. 100, l. 18 – p. 104, l. 7);

(ii) With respect to Sparrell's transactions and agreements with Live Oak Banking Company (Exhibit O, Designation H), the Defendant claimed to have no recollection of Sparrell's Acquisition Loan which funded Sparrell's purchase of the Cohasset and Norwell Properties, alleged that he didn't know anything about Live Oak Bank, the loan documents or how the closing funds were disbursed or accounted for on the HUD-1 loan settlement statement. *See* Exhibit Q (at p. 105, l. 20 – p. 111, l. 14, p. 136, l. 15);

(iii) On Plaintiff's questions regarding Sparrell's transactions and agreements with BM McNamara and BM Mack, including any payments received from these entities (Exhibit O, Designations D, E, N and O), Defendant claimed to have "no idea"

---

[13] The Defendant's deposition was scheduled on the same day. Since the Defendant appeared as the designated representative for Sparrell, the depositions were combined by agreement for the sake of efficiency.

        about the Sparrell Note, couldn't identify it and didn't "recall" it. *See* Exhibit R (at p. 121, l. 10 – 17);

(iv)    Defendant evaded questions concerning the accounting of Sparrell's preneeds funds and contracts by alleging that he didn't know anything about the trust company (Forethought) to which certain of the preneeds money had been deposited and didn't recognize related accounting records that contain his own handwriting (*See* Exhibit S (at p. 111, l. 2,  p. 115, l. 16) even though the Subpoena required the designation of a representative knowledgeable of Sparrell's financial books of account, records and affairs and business operations (Exhibit O, Designations A-C);

(v)    When questioned about Sparrell's balance sheets that had been produced, Defendant claimed not to recognize the documents, claimed he didn't know what it was, who prepared it or details concerning values listed. He also didn't know if the company was dissolved. *See*  Exhibit T (at p. 146, l. 13,  p. 148, l. 2);

(vi)    The Defendant was evasive and claimed not to recognize or be able to explain a packet of Sparrell's business records that were produced in response to prior discovery concerning Sparrell's liabilities, including purported "loans" from Sparrell to its "employees" and family members, including the Defendant's wife, children and the Defendant himself and payments made from Sparrell's account for Defendant's country club dues, credit cards and car payments. *See*  Exhibit U (at p. 148, l. 13,  p. 149, l. 13);

  (vii) Defendant was also unable to provide a substantive explanation as to Sparrell's alleged $0.00 value as of the Defendant's Ch. 7 filing on April 13, 2017. *See* Exhibit V (at p. 133, l. 3, p. 135, l. 24) and Exhibit O (Designations A-Q).[14]

Upon demonstration that the Defendant was not qualified to testify for Sparrell on the topics that were listed in the subpoena, Plaintiff's counsel inquired about the Defendant's preparation and was advised that his preparations involved meeting with his attorney for several hours and nothing else. Exhibit W (at. p. 139, l. 10-17). The Defendant acknowledged that Brendan was the person with the most knowledge of the transactions involving Sparrell and that Brendan was not asked to appear as the designated witness nor had anyone else been asked either. Exhibit W (at. p. 138, l. 9 – p. 139, l.9) and Exhibit T (p. 148 l. 5 - 12.) The deposition has been suspended. An order to compel with monetary sanctions is justified.

## II.  Argument

### (a) An Order to compel is warranted

When served with a subpoena under Rule 30(b)(6), the responding corporation has the onus to designate persons to testify on its behalf as to all matters "known or reasonably available to it." *See* Fed.R.Civ.P. 30(b)(6). If the designated representatives do not possess personal knowledge of the matters set out in the subpoena, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers on its behalf. Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D.Neb.1995) citing Marker v. Union Fid. Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C.1989). "If no current employee has sufficient knowledge to provide

---

[14]Earlier in discovery, the Defendant did a document dump of Sparrell's financial records and other material in response to Plaintiff's First Request for Production of Documents to the Defendant, No. 1 requesting all documents that support Defendant's contention that, as of April 13, 2017, the value of his interest in Sparrell was $0.00. At the deposition, Plaintiff requested an explanation of the production and how it supports the purported zero value.

the requested information, the party is obligated to prepare one or more witnesses so that they may give complete, knowledgeable and binding answers on behalf of the corporation." Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D. Neb. 1995) (citation, internal quotation marks, and alteration omitted)).  The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.  *See* Buycks–Roberson v. Citibank Federal Sav. Bank, 162 F.R.D. 338, 343 (N.D.Ill.1995); S.E.C. v. Morelli, 143 F.R.D. 42, 45 (S.D.N.Y.1992).  The corporation is responsible for producing an appropriate Rule 30(b)(6) witness on information within its knowledge or reasonably available to it even if the relevant documents are voluminous and various people hold the information. *See*  Concerned Citizens of Belle Haven v. Belle Haven Club, 223 F.R.D. 39, 43 (D.Conn. 2004).   Here, Sparrell failed to fulfill its Rule 30(b)(6) obligations.  Although the Defendant is the sole principal and owner of Sparrell, he admitted that he was not the suitable candidate for the task and was clearly ill prepared for the proceeding.  *See* Exhibit W (at. p. 138 - 139).

  Rule 30(b)(6) is designed "to avoid the possibility that several officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." Brazos River Auth. v. GE Ionics, Inc., 469 F.3d 416, 433 (5th Cir. 2006) citing 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2103, at 33 (2d ed.1994).  Otherwise, a corporation would be able to deceitfully select at trial the most convenient answer presented by a number of finger-pointing witnesses at the depositions.  *See* Lapenna v. Upjohn Co., 110 F.R.D. 15 at 25 (E.D.Pa. 1986).   This appears to be the tactical

game of sandbagging that the Defendant was trying to pull off here.[15] An Order under

Fed.R.Civ.P. 37(a)(3)(B)(i) compelling Sparrell to comply with the Subpoena and produce

proper designated persons is warranted.

### (b) Monetary sanctions are appropriate

If a Rule 30(b)(6) designated witness is not prepared or is unresponsive, the organization

may be subject to sanctions. *See* Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 268 (2d

Cir. 1999); Lofton c. Verizon Wireless (VAW) LLC, 308 F.R.D. 276, 289 (N.D. Cal. 2015);

Coryn Group II, LLC v. O.C. Seacrets, Inc., 265 F.R.D. 235, 239 (D.Md. 2010) When one fails

to comply with Rule 30(b)(6), Rule 37 allows courts to impose various sanctions, including the

preclusion of evidence. *See* Fed.R.Civ.P. 37(b)(2)(B); see, e.g., Commodity Futures Trading

Comm'n v. Noble Metals Int'l, Inc.*,* 67 F.3d 766, 770–71 (9th Cir.1995); Malede v. D.C. Jail

Facility, 252 F.R.D. 63, 64 (D.D.C. 2008)(imposing attorney's fees for need to repeat

preparation to take the deposition and to prepare the motion to compel). Sparrell's deposition

was commenced on March 8, 2018 and suspended. During breaks at the deposition counsel for

the Plaintiff and the Defendant conferred about designating a different Rule 30(b)(6)

representative and at least two follow-up telephone calls conferring on the matter occurred on or

about March 12 and April 8, 2019. *See* Certification under MLBR 7037-1(b) and Fed. R.

CIV.P. 37(a)(1) filed herewith. To date, no new Rule 30(b)(6) designee was confirmed or

volunteered necessitating the filing of this motion.[16] Consequently, an Order pursuant to

Fed.R.Civ.P. 37(c)(1)(A) against the Defendant and Sparrell should enter requiring payment of

$2,207.00 to the Plaintiff for:

---

[15] It also fits with the loose arguments that Brendan won't "consent" to testify.
[16] Defendant's counsel suggested that Plaintiff's counsel work with Brendan's attorney on having Brendan appear. Plaintiff's inquiries and attempts to work something out with Brendan's counsel were unsuccessful.

(i) the legal fees associated with the preparation drafting and filing of this motion ($1,290.00);

(ii) reimbursement of constable costs for the initial failed service of Sparrell's Subpoena ($32.00) resulting from the games played by the Defendant's sons (including Brendan);

(iii) one half of the costs for the transcript of the deposition on March 8 ($285.00);[17] and

(iv) Anticipated legal fees to re-prepare for Sparrell's deposition to be taken under an order to compel ($600.00)[18].

An Affidavit of attorneys' fees and costs is filed herewith.

### III. Conclusion

WHEREFORE, for all of the foregoing reasons, Plaintiff requests that this motion be ALLOWED and that the Court Order:

(A) Sparrell to designate, notify Plaintiff in advance and produce a new witness prepared in accordance with Rule 30(b)(6) to appear for deposition at a time that is mutually convenient for the Plaintiff;

(B) Sparrell and the Defendant pay Plaintiff $2,207.00 forthwith as sanctions associated with their actions necessitating this motion; and

(C) Such relief as this Honorable Court deems justified under the circumstances.

---

[17] Only half is requested since the deposition was a combination of the Defendant and Sparrell. The total bill for the transcript is $570.00.

[18] At least 2.0 hours of time will be necessary for counsel's preparation.

|  |  |
|---|---|
| Dated: May 3, 2019 | The Plaintiff,<br><br>The Bank of Canton<br><br>By its Attorneys,<br><br>/s/ Michael A. Wirtz<br>_____<br>Jack J. Mikels, BBO# 345560<br>Michael A. Wirtz, BBO# 636587<br>JACK MIKELS & ASSOCIATES, LLP<br>1 Batterymarch Park, Suite 309<br>Quincy, MA  02169-7454<br>Tel:  617.472.5600<br>Email: Lawoffice@jackmikels.com |

### **CERTIFICATION PURUSANT TO MLBR 7037-1(b) AND FED. RULE CIV.P. 37(a)(1) APPLICABLE PURSUANT TO FED. RULE BANK. P. 7037**

I, Michael A. Wirtz, hereby certify that prior to filing the foregoing motion to compel, I conferred in person and by phone with counsel for the Defendant and Sparrell, Joseph G. Butler, in a good faith effort to have a new Rule 30(b)(6) witness appear at deposition on behalf of Sparrell and despite my good faith efforts and requests no such designation was made or voluntarily provided.  The in person conference took place on March 8, 2019 and phone conferences were held on or about March 19 and April 8, 2019.

Signed under the pains and penalties of perjury.

/s/ Michael A. Wirtz
_____
Michael A. Wirtz

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of May, 2019, I caused a true copy of the PLAINTIFF'S MOTION TO COMPEL SPARRELL FUNERAL SERVICES, INC. TO DESIGNATE A PREPARED REPRESENTATIVE PURSUANT TO RULE 30(b)(6) AND AWARD PLAINTIFF ITS REASONABLE EXPENSES AND ATTORNEYS' FEES AS SANCTIONS, MEMORANDUM IN SUPORT OF PLAINTIFF'S MOTION TO COMPEL SPARRELL FUNERAL SERVICES, INC. TO DESIGNATE A PREPARED REPRESENTATIVE PURSUANT TO RULE 30(b)(6) AND AWARD PLAINTIFF ITS REASONABLE EXPENSES AND ATTORNEYS' FEES AS SANCTIONS and AFFIDAVIT REGARDING ATTORNEY'S FEES to be served upon all parties of record and/or with appearances in the above action, including the following counsel for the Defendant by electronic means:

    Joseph G. Butler, Esq.
    Law Office of Joseph G. Butler
    355 Providence Highway
    Westwood, MA 02090
    JGB@JGButlerlaw.com

        /s/ Michael A. Wirtz
        _____
        Michael A. Wirtz, BBO# 636587
        JACK MIKELS & ASSOCIATES, LLP
        1 Batterymarch Park, Suite 309
        Quincy, MA 02169-7454
        Tel: 617.472.5600
        mwirtz@jackmikels.com