**UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re:<br><br>Robert R. McNamara,<br>　　　　Debtor<br><br>THE BANK OF CANTON<br>　　　　Plaintiff,<br>v.<br><br>ROBERT R. MCNAMARA,<br>　　　　Defendant. | Chapter 7<br>Case No. 17-11329-MSH<br><br><br><br>Adversary Proceeding<br>No:  18-1022 |

**RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1 and Fed. R. Civ. P. 56, Plaintiff, The Bank of Canton (the "Plaintiff") submits this Statement of Undisputed Material Facts in support of its Motion for Summary Judgment against the Defendant/Debtor, Robert R. McNamara (the "Debtor.")  Each statement below is followed by a reference to the evidence supporting the statement.  All evidence cited herein has been attached to the accompanying Affidavit of Michael A. Wirtz in Support of Plaintiff's Motion for Summary Judgment ("Wirtz-Aff."), and/or is identified by citation to docket entries in Debtor's Chapter 7 Case No. 17-11329-MSH ("ECF").

**UNDISPUTED MATERIAL FACTS**

1. The Debtor is indebted to the Plaintiff in excess of $156,700 resulting from a post-foreclosure deficiency balance due on a promissory note made by the Debtor and his spouse, Alice E. McNamara ("Alice") dated November 9, 2007, in the original principal amount of $746,250 (the "Note"). ECF 12, p. 17, ¶4.3.

2. Plaintiff has a pending civil action against the Debtor in the Norfolk Superior Court, Docket No. 1682CV01049, seeking judgment for the deficiency balance (the "Deficiency Action"). ECF 12, p. 39, ¶9; Wirtz-Aff. ¶10. The damages in the Deficiency Action result from a post foreclosure deficiency due under a promissory note from the Debtor and Alice that had been secured by a mortgage on the real estate located at 21 Central Street, Norwell, MA which was foreclosed upon by the Plaintiff on or about June 11, 2015 and which the Plaintiff was the successful bidder. Wirtz-Aff. ¶9.

3. On or about April 13, 2017, the Debtor petitioned for relief under Chapter 7 of the Bankruptcy Code case No. 17-11329-MSH. ECF 1.

4. On or about April 28, 2017, the Debtor filed Scheduled A-J, Summary of Schedules, and Statement of Financial Affairs. ECF 12.

5. In response to Question 19 of Schedule A/B regarding Debtor's financial assets in non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture, the Debtor identified having "100%" ownership in "Sparrell Funeral Services, Inc." ("Sparrell") and that the current value of the portion owned is "$0.00." ECF 12, p. 5, ¶19.

6. The Debtor stated "No" in response to Question 35 of Schedule A/B regarding any financial assets you did not already list. ECF 12, p. 8, ¶35.

7. The Debtor stated "No" in response to Question 37 of Schedule A/B asking "do you own or have any legal or equitable interests in any business-related property?" ECF 12, p. 8, ¶37.

8. The Debtor stated "No" in response to Question 44 of Schedule A/B regarding any business-related property you did not already list. ECF 12, p. 9, ¶44.

9. The Debtor stated "No" in response to Question 53 of Schedule A/B asking "Do you have other property of any kind you did not already list?" The examples included country club membership. ECF 12, p. 10, ¶53.

10. The Debtor's Schedule E/F includes:

    (i) Student loan debt to ACS for his adult son and co-borrower, Shane C. McNamara. ECF 12, p. 17, ¶4.1, and p. 24, ¶3.3;

    (ii) Student loan debt to AES Credit his adult daughter and co-borrower, Katie M. Funari. ECF 12, p. 17, ¶4.2 and p. 25, ¶3.5;

    (iii) Student loan debt to Navient for his adult daughter and co-borrower, Kelly A. Sherman. ECF 12, p. 19, ¶4.7, and p. 25, ¶3.4;

    (iv) Motor vehicle loan for financing a Jeep in which Debtor and his adult son Brendan McNamara were jointly obligated to Workers Credit Union. ECF 12, p. 19, ¶4.8, and p. 26, ¶3.12 and ECF Claim 1-1. Schedule H falsely represents that Sparrell Funeral Services, Inc. is a codebtor on this loan. ECF 12, p. 19, ¶4.8, and p. 25, ¶3.11 and ECF Claim 1-1

11. The Debtor stated "No" in response to Question 28 of the Statement of Financial Affairs asking "within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties." ECF 12, p. 46, ¶28.

12. Sparrell was organized in 1983 by the Debtor and his now deceased brother, John B. McNamara ("John") who each held equal ownership. Wirtz-Aff. ¶ 7, and Exhibit A, p. 13, l. 13 and p. 15, l. 4.

13. McNamara Associates, LLC ("McNamara Associates") was organized in 1999 and the Debtor was Manager. Wirtz-Aff. ¶ 7, and Exhibit A, p. 13, l. 13 and p. 15, l. 4.

14. Sparrell and McNamara Associates had been engaged in the business of owning and operating certain funeral home businesses doing business as McNamara-Sparrell Funeral Homes with locations in Cohasset at 1 Summer Street, Cohasset, MA (the "Cohasset Property"), Norwell at 30 Central Street, Norwell, MA (the "Norwell Property") and Brighton, MA. The Debtor primarily operated the funeral homes at the Cohasset Property and Norwell Property. Wirtz-Aff. ¶6, Exhibit D, p. 87 l. 22-24.

15. Ownership of the real estate at the Cohasset Property and Norwell Property was held by the McNamara Associates since on or about 1999. Wirtz-Aff. ¶ 11, Exhibit I and Wirtz-Aff. ¶ 12, Exhibit J.

16. On or about August 31, 2011, the Debtor entered a Settlement Agreement with John, Sparrell, McNamara Associates and MHF Liquidating Company, Inc. (the "Settlement Agreement"). Wirtz-Aff. ¶13, Exhibit K and ¶3, Exhibit A, p. 33 1. 1-24, p. 55, l.5 – p. 56 l.8.

17. The dispute to which the Settlement Agreement pertained included Debtor's so called "mismanagement" of hundreds of thousands of dollars in prepaid funeral funds (the "Pre-needs"). Wirtz-Aff. ¶13, Exhibit K and ¶3, Exhibit A, p. 33 1. 1-24, p. 55, l.5 – p. 56 l.8, and Exhibit M.

18. Pre-needs are essentially pre-paid funeral funds that are to be held in trust by the funeral home for its clients' pre-needs benefits. Wirtz-Aff. ¶5, Exhibit C, p. 57, l.8 - p. 58, l. 20.

19. In connection with the Settlement Agreement, Sparrell agreed to lease the Cohasset Property and Norwell Property from McNamara Associates pursuant to a written Lease Agreement. Wirtz-Aff. ¶13, Exhibit L.

20. At all relevant times following the 2011 Settlement Agreement until November 7, 2016, the Debtor's son, Brendan McNamara ("Brendan") alleges that he was employed by Sparrell as its funeral director. Wirtz-Aff. ¶3, Exhibit A, p. 8, ll. 11- 21.

21. In addition to the Debtor, Brendan had authorization to use Sparrell's accounts, including its operating account. Wirtz-Aff. ¶3, Exhibit A, p. 17, l. 13.

22. The Debtor paid and/or authorized payment of various personal expenses for himself and family through Sparrell's account, including:

    (i) Loan payments due to the Plaintiff by the Debtor and Alice on Note-1 and Note-2. Wirtz-Aff. ¶16- 19, Exhibits N, O, P, Q;

    (ii) Student loans for his adult children whom were also codebtors, including, A.C.S. for Shane C. McNamara, AES Credit for Katie M. Funari, Navient for Kelly A. Sherman. Wirtz-Aff. ¶¶16 – 21, Exhibits N, O, Q, R and S and ECF 12, p. 17, ¶¶4.1, 4.2, p. 19 ¶4.7, p. 24, ¶¶3.3, 3.5 and p. 25, ¶3.4.

    (iii) Expenses relating to Debtor's personal boat, including loan payment, trailer registration and harbor moorings. Wirtz-Aff. ¶¶17 and 20 Exhibit O (p. 36/89) and Exhibit R (p. 58/89);

    (iv) Dues to maintain his personal memberships at the Scituate Country Club, the Scituate Harbor Yacht Club and the Cohasset Country Club; Wirtz-Aff. ¶16, 17 Exhibits N, O. Debtor's Schedules fail to disclose that he has

a lifetime membership to the Scituate Harbor Yacht Club. Wirtz-Aff. ¶17, Exhibit C, p. 123, l. 4, ECF 12, p.11, Q. 53.

(v) A personal auto loan to Workers Credit Union for a Jeep Wrangler that he and his son Brendan were codebtors and they registered to Sparrell. Wirtz-Aff. ¶¶21, Exhibits S and T and ECF Claim 1.1.

23. On or about November 18, 2015, the Plaintiff brought suit against the Debtor and Alice to enforce the obligations of a promissory note in the Norfolk Superior Court, Case No. 1582CV01506, resulting in judgment against the Debtor and Alice in the sum of $43,615.37 on or about June 29, 2016. Wirtz-Aff. ¶8. At a hearing in the Norfolk Action on November 30, 2015, Debtor testified that he had transferred Sparrell to Brendan. Wirtz-Aff. ¶31, Exhibit AD, p. 13, ll.6-7.

24. On or about September 26, 2016, Sparrell purchased the Cohasset and Norwell Properties from McNamara Associates. Wirtz-Aff. ¶ 11, Exhibit I, ¶ 12, Exhibit J, ¶ 23, Exhibit U and ¶ 24, Exhibit V.

25. To fund its purchase of the Cohasset and Norwell Properties, Sparrell obtained a $1.39 Million loan through Live Oak Banking Company (the "Acquisition Loan") secured by a mortgage on the Cohasset and Norwell Properties. Wirtz-Aff. ¶ 25, Exhibit W and ¶ 26, Exhibit X.

26. In connection with the Acquisition Loan, Sparrell was required to (and did) provide financial documents including balance sheets and financial statements to Live Oak Banking Company. Wirtz-Aff. ¶ 3, Exhibit A, p. 101, l. 16 – 102, l. 13, Wirtz-Aff. ¶ 39, Exhibit Y and Wirtz-Aff. ¶ 27, Exhibit Z.

27. A portion of the proceeds from Sparrell's Acquisition Loan was used to settle and

payoff two personal obligations of the Debtor consisting of:

(i) $42,069.61 paid to the Plaintiff for the sums due from the Debtor and Alice on the Norfolk Judgment; Wirtz-Aff. ¶ 3, Exhibit C, p. 64, l. 17 – p. 66 l. 23, Wirtz-Aff. ¶ 23, Exhibit U at line 505, Wirtz-Aff. ¶8, Exhibit F, Docket entry 09-30-2016 and Wirtz-Aff. ¶29, Exhibit AB;  and

(ii) $175,000.00 paid to Forethought to satisfy the Debtor's liability for his mismanagement of the missing/deficient Pre-needs.  Wirtz-Aff. ¶ 5, Exhibit C, p. 69, ll. 10 – 19, Wirtz-Aff. ¶ 23, Exhibit U at line 507, Wirtz-Aff. ¶ 28, Exhibit AA, Wirtz-Aff. ¶ 3, Exhibit A, p. 71, ll. 1 – 4, Wirtz-Aff. ¶ 3, Exhibit C, p. 54-57.

28. On or about May 1, 2016, the Debtor made written representation to Live Oak Banking Company of the Debtor's desire and intent to gift Sparrell and its "business, property, assets, etc. and all aspects relating to" to his son Brendan for "no cash exchange or sale price; this business will be 100% gifted…" Wirtz-Aff. ¶ 30, Exhibit AC.

29. The Cohasset and Norwell Properties were transferred to BM Mack Properties, LLC ("BM Mack"), a realty holding company owned by Brendan and his wife Melissa McNamara.  Wirtz-Aff. ¶5, Exhibit C, p. 16 l. 21, Wirtz-Aff. ¶32, Exhibit AE, Wirtz-Aff. ¶33, Exhibit AF.

30. All of Sparrell's physical business assets and accounts were transferred BM McNamara Funeral Services, Inc. ("BM McNamara"), an entity engaged in the operation of funeral services in which Brendan is the sole principal officer.  Wirtz-Aff. ¶5, Exhibit C, p. 16 l. 21.

31. In addition to Quitclaim Deeds, Sparrell's transfer of the Norwell and Cohasset Properties to BM Mack were documented under a Real Estate Purchase and Sale Agreement (the "P&S"). Wirtz-Aff. ¶34, Exhibit AG, Wirtz-Aff. ¶32, Exhibit AE, Wirtz-Aff. ¶33, Exhibit AF.

32. Sparrell's transfer of its business assets to BM McNamara were documented under an Asset Purchase Agreement including goodwill (the "Asset Agreement") Wirtz-Aff. ¶35, Exhibit AH, Wirtz-Aff. ¶5, Exhibit C, p. 31, l. 19.

33. BM Mack and BM McNamara executed a promissory note payable to Sparrell in the sum of $225,000 (the "Sparrell Note.") Wirtz-Aff. ¶36, Exhibit AI.

34. No closing disclosure statement or settlement statement concerning the purported closing of the Cohasset and Norwell Properties to BM Mack was prepared or executed, nor were there any offsets or adjustments made for real estate taxes, etc. Wirtz-Aff. ¶5, Exhibit C, p. 30 ll. 4 and 22.

35. As of August 12, 2016, the Norwell Property had an appraised value of $811,000. Wirtz-Aff. ¶37, Exhibit AJ.

36. As of August 12, 2016, the Cohasset Property had an appraised value of $1,000,000. Wirtz-Aff. ¶38, Exhibit AK.

37. Prior to the transfer of the assets to BM McNamara and filing Chapter 7, the Debtor did not have the business or assets appraised. Wirtz-Aff. ¶6, Exhibit D, p. 129 ll. 6-13, Wirtz-Aff. ¶5, Exhibit C, p. 36 l. 16.

38. In its 2016 Federal Tax Returns, Schedule L reported its goodwill value at beginning of tax year to be $100,000. Wirtz-Aff. ¶40, Exhibit AL.

39. The Debtor and Brendan allege that Sparrell was defunct and ceased operations as of November 7, 2016. Wirtz-Aff. ¶3, Exhibit A, pp. 15-16 ll. 1, 9 and 13, Wirtz-Aff. ¶4, Exhibit B, p. 17, ll. 10-16.

40. BM McNamara first opened an operating account in May 2017. Wirtz-Aff. ¶5, Exhibit C, p. 82, l. 17.

41. After November 7, 2016, the business operations at the Cohasset and Norwell Properties did not change with respect to the same independent contractors continued working in customary fashion and the business continued receiving receivables payable in Sparrell's name and deposited in Sparrell's account. Wirtz-Aff. ¶3, Exhibit A, p. 24 l. 24, p. 25 l. 8 and 13, Wirtz-Aff. ¶3, Exhibit C, p. 82 l. 22 - p. 83 l. 2, Wirtz-Aff. ¶41, Exhibit AM, Wirtz-Aff. ¶42, Exhibit AN.

42. BM McNamara first obtained its own insurance in April or May 2017. Wirtz-Aff. ¶5, Exhibit C, p. 85, l. 17 – p. 86, l. 3.

43. BM McNamara obtained its own Funeral Establishment License on or about October 25, 2018, previously the businesses at the Cohasset and Norwell Properties had been operated under Sparrell's license. Wirtz-Aff. ¶43, Exhibit AO, Wirtz-Aff. ¶3 Exhibit A, p. 18, ll. 6-12.

44. At all times relevant hereto, Sparrell has had an open $50,000 line of credit at Eastern Bank. Wirtz-Aff. ¶44, Exhibit AP. As of October 2018, the total payoff balance on the Line of Credit was $34,000.

45. According to the Eastern Bank statement for Sparrell's operating account for the period of Nov 012016 thru Nov. 30, 2016, the balance in the account as of November 7, 2016 was $8,102.20. Wirtz-Aff. ¶45, Exhibit AQ, Wirtz-Aff. ¶5 Exhibit C, pp. 96-97, l. 6.

46.     Monthly payments due to Sparrell under the Sparrell-Note were paid directly to the Debtor on or about December 22, 2016 in the sum of $950.00 and on or about March 12, 2017 in the sum of $3,800.00.  Wirtz-Aff. ¶21, Exhibit S at pp. marked 35/88 and 60/88, Wirtz-Aff. ¶22, Exhibit T at pp. marked 10/45 and 29/45, Wirtz-Aff. ¶46, Exhibit AR   Wirtz-Aff. ¶3, Exhibit A, pp. 82-84, Wirtz-Aff. ¶4, Exhibit B, pp. 18-20.

47.     On or about July 18, 2017, a new checking account was opened in the name of Sparrell at Eastern Bank in which Brendan was the only authorized signor (the "New Account.") Wirtz-Aff. ¶47, Exhibit AS,  Wirtz-Aff. ¶5, Exhibit C, pp. 96-97, l.6.

48.     In or around March 2018, the New Account was set on automatic loan payment to make monthly payments of installments due on Sparrell's Credit Line to Eastern Bank.  Wirtz-Aff. ¶5, Exhibit C, p. 132 l. 14 – p. 133, l. 2.

49.     In April 2018, BM McNamara obtained a $60,000 SBA loan from Eastern Bank (the "SBA Loan") and deposited $39,319.53 from the SBA Loan proceeds into Sparrell's New Account.  Wirtz-Aff. ¶5 Exhibit C, pp. 97 – 98 and p. 107 – 108 l.2 and p. 109, l. 10.

50.     Although alleged to be unemployed, the Debtor obtained a new Funeral Director and Embalmer License from the State Board of Embalming & Funeral Directing on or about January 2, 2019 (Wirtz-Aff. ¶43, Exhibit AO, Wirtz-Aff. ¶6 Exhibit D, pp. 13-18) and has access codes and access to the Cohasset and Norwell Properties, (Wirtz-Aff. ¶6 Exhibit D, pp. 31-32) access to BM McNmara's checkbook, from which he writes checks from time to time (Wirtz-Aff. ¶6 Exhibit D, pp. 45-64, Wirtz-Aff. ¶48, Exhibit AT) and works wakes and funerals (Wirtz-Aff. ¶6 Exhibit D, pp. 33-34) and goes to Town halls to obtain death certificates (Wirtz-Aff. ¶6 Exhibit D, p. 51)

51.     BM McNamara's records indicate that this entity continued paying personal expenses for the Debtor, including his dental bills, (Wirtz-Aff. ¶5 Exhibit C, p. 122, l. 9-20 and Wirtz-Aff. ¶49 Exhibit AU), yacht club membership (Wirtz-Aff. ¶5 Exhibit C, p. 123, ll. 1-12 and Wirtz-Aff. ¶49 Exhibit AU) and pharmacy prescriptions (Wirtz-Aff. ¶5 Exhibit C, p.125 l. 8 – p. 126 l. 18 and Wirtz-Aff. ¶49 Exhibit AU).

52.     At deposition the Debtor (individually and as the designated witness for Sparrell under Rule 30(b)(6)) could not to explain the basis for the claim the $0.00 value stated in the Schedules.  Wirtz-Aff. ¶5 Exhibit D, p.132 l. 9.  Debtor responded "I don't know" to inquires regarding the $0.00 value.  Wirtz-Aff. ¶5 Exhibit D, p.132 l. 9.  The Debtor also admitted that he did nothing to verify whether or not Sparrell was worth $0.00. Wirtz-Aff. ¶5 Exhibit D, p.135 l. 10. The Debtor represents that he did not consult with anyone to confirm that Sparrell was worth $0.00.  Wirtz-Aff. ¶5 Exhibit D, p.135 l. 14, Wirtz-Aff. ¶50 Exhibit AV, Wirtz-Aff. ¶5 Exhibit D, p. 7, l.17 and pp.133-135.

53.     At deposition Debtor testified that he transferred the funeral homes to his son Brendan to avoid his brother John as a creditor.  Wirtz-Aff. Exhibit D, p. 37, l. 17.

54.     At all times relevant hereto, the remaining balance owed on the Sparrell-Note has been greater than the sum due on Sparrell's Line of Credit due to Eastern Bank.  Wirtz-Aff. Exhibit C, p. 132, l. 23 – 133, l. 2 and p. 37. ll. 15-16, p. 39., l. 17, p. 43, l. 7.

                    Respectfully submitted,

                    The Plaintiff,
                    The Bank of Canton

                    By its Attorneys,

Dated: July 2, 2019

                    /s/ Michael A. Wirtz
                    _____
                    Jack J. Mikels, BBO# 345560
                    Michael A. Wirtz, BBO# 636587
                    JACK MIKELS & ASSOCIATES, LLP
                    1 Batterymarch Park, Suite 309
                    Quincy, MA  02169-7454
                    Tel:  617-472-5600
                    Email: Lawoffice@jackmikels.com